BADDOUR, INC. and BMC Sales, Inc., Plaintiffs,

v.

UNITED STATES of America and Michael E. Posey, Defendants.

No. DC82–108–NB–O.

United States District Court, N.D. Mississippi, Delta Division.

June 28, 1985.

Eugene Greener, Jr., Memphis, Tenn., Nat G. Troutt, Senatobia, Miss., for plaintiffs.

Thomas W. Dawson, Oxford, Miss., Steven Shapiro, William D. Holmes, Tax Div., Southern Region, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This case was taken under advisement by the court following a bench trial. Having considered the oral arguments, testimony, post-trial briefs, and other memoranda offered by the parties, and being fully advised in the premises, the court is now in a position to render a decision. The plaintiffs herein, Baddour, Inc. and its wholly owned subsidiary BMC Sales, Inc., shall be considered throughout this opinion as the same entity and shall be referred to as "Baddour."

### A. Facts

In this case, the plaintiff Baddour seeks damages due to an alleged wrongful levy on its property by defendant United States of America, acting through the United States Internal Revenue Service (the IRS), and defendant Michael E. Posey, an IRS agent. Furthermore, Baddour seeks recovery for storage costs allegedly incurred due to verbal instructions from the defendant.

### 1. The Batesville Levy

This action arose from the following facts. Baddour entered into a contract with Brame Manufacturing Co., Inc. (hereinafter "Brame" or "the taxpayer") whereby Baddour periodically shipped raw material from its facility in Memphis, Tennessee to the Brame factory in Batesville, Mississippi. Thereafter, Brame manufactured the raw material into finished garments, shipped them to Baddour's pre-arranged purchasers, and received a portion of the purchase price as payment for its manufacturing work. The parties contemplated that Baddour would retain full ownership in the goods, and that Brame would hold the raw materials only for manufacture and shipping.

In 1981 and 1982, the IRS assessed Brame for tax delinquencies in excess of $170,000.00. Subsequently, the IRS filed notices of federal tax liens in both the office of the Chancery Clerk in Sardis, Mississippi and the office of the Chancery Clerk in Batesville, Mississippi. The IRS agent in charge of the case, defendant Michael E. Posey, then met with Julius Brame, the president and owner of the taxpayer, to ascertain the taxpayer's assets. Following this meeting, the defendant Posey completed an IRS form styled "Collection Information Statement for Business," and noted "approx. 60,000 [sic] in plant that probably belongs to Baddour." However, based both upon Mr. Brame's description of the business arrangement between Brame and Baddour and upon the

absence of a UCC filing statement by Baddour on the goods, Posey nevertheless believed that Brame actually had title to the goods.[1] Therefore, the IRS issued a levy (the "Batesville levy") and a Notice of Seizure on April 23, 1982 to the taxpayer and seized the goods in the Batesville factory by placing a padlock on the outside door. Some if not all of the goods levied on belonged to Baddour.

Following the seizure, Charles S. Vail, the corporate secretary of Baddour, wrote a letter to Mr. Posey detailing Baddour's ownership of the property. In this letter, Vail asserted that the taxpayer "had no interest in the goods," that Baddour "bought the goods, paid for the goods, and had them shipped" to the taxpayer's plant, that the taxpayer was "to do certain work to said goods and ship them" to Baddour's customers, and that "the transaction was never intended as a security transaction" because the goods belonged to Baddour at all times. The letter and supporting documents were hand-delivered to Posey at a meeting in Sardis, Mississippi on May 4, 1982 between Posey, Vail, and Leon Weatherford, the vice-president of Baddour. Although Posey responded that no U.C.C. statement was filed on the goods, Vail and Weatherford argued that no such filing was necessary. Cf. Miss.Code Ann. § 75–9–402 (1972) (U.C.C. filing statement reflects security interest in goods; not a demonstration of ownership). At the conclusion of the meeting, Posey promised to "get back" with Vail regarding both Baddour's asserted ownership in the property and its request for an inventory. Unfortunately, Posey initiated no further contact with regard to these matters.

Rather, Posey and Julius Brame entered into an agreement without Baddour's knowledge for the "release" of the goods. However, this release was conditioned upon the goods being transported to Mississippi Mills, a factory located in Sardis, Mississippi, where manufacture was to be completed. Thereafter, the goods were to be sold and the net proceeds of the sale, after payment of finishing and shipping costs to Mississippi Mills, were to be disbursed 50% to the IRS, 25% to Brame for sales expense, and 25% to the Panola County Bank, a creditor of Brame. The release was documented by a printed form styled "Receipt for Property Returned," dated March 25, 1982 and signed by Michael Posey for the IRS and Mr. Fred Klyce as "Agent for Brame."[2] The contemporaneous agreement for manufacture and sale was memorialized in a handwritten letter to Posey from Fred Klyce. The United States ultimately received $1,502.00 under this agreement, with a similar amount divided between Brame and the Panola County Bank.

Subsequent to this "release," representatives of Baddour discovered that their goods were no longer in the Brame factory. Baddour immediately contacted Posey to ascertain the whereabouts of their property; however, Posey divulged merely that the goods had been "released to the taxpayer." Only after commencement of the present litigation did Baddour learn of the contemporaneous agreement for manufacture and sale. Thereafter, Baddour representatives visited Mississippi Mills and determined that most of the goods were either odd scrap or irregulars. Furthermore, all the goods allegedly were badly wrinkled and deteriorating from humidity and vermin infestation. The property at that time was given a value of $6,625.60; however, it allegedly has no present value due to continued deterioration.

## 2. The Memphis Levy

Contemporaneously with the Batesville levy, Posey sent a Form 668–A Notice of

---

1. One who has full title to goods is not required to file a filing statement, cf. Miss.Code Ann. § 75–9–102(1) (1972) (application of secured transaction provisions limited to transaction intended to create security interest or to sale of accounts or chattel paper); thus, Mr. Posey, a layman, reached an erroneous legal conclusion.

2. Significantly, Fred Klyce had no connection with either Brame or Baddour; however, he was both the President of Mississippi Mills, Inc. and a member of the Board of Directors of the Panola County Bank, a major creditor of Brame.

Levy to Baddour in Memphis, Tennessee (the "Memphis levy"), levying upon any Brame property held by Baddour. Baddour responded by letter, documented its possession of goods belonging to Brame, and requested further instructions. Posey allegedly responded orally that the goods should be stored and that Baddour would be entitled to reasonable storage costs. Baddour secured the goods in its own trailer; however, inasmuch as further instructions were not given despite Baddour's repeated requests, the goods remain stored in the trailer. Therefore, Baddour seeks an alleged reasonable storage cost of $25.00 per day.

### B. Conclusions of Law

#### 1. The Batesville Levy

 The plaintiff seeks recovery for the Batesville levy under 26 U.S.C. § 7426 (1954 & Supp.1985), entitled "Civil Actions by Persons other than Taxpayers." 26 U.S.C. § 7426(a)(1) provides in part as follows:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

*Id.* 26 U.S.C. § 7426 constitutes a waiver by the United States of its sovereign immunity to suit; however, if the wrongful levy is released prior to the filing of the suit, no waiver exists and the court acquires no jurisdiction under this statute. *See Nickerson v. United States*, 75–1 U.S.T.C. para. 9455 (D.R.I.1974), *aff'd per curiam*, 513 F.2d 31 (1st Cir.1975). Accordingly, if the Batesville levy were properly released, this court cannot entertain an action under § 7426. *But cf. Smith v. United States*, 458 F.2d 1231, 1233 (9th Cir.1972) (damages award directly under Fifth Amendment prohibition against taking of private property without just compensation). Thus, this court must preliminarily determine whether the levy was released prior to the filing of this suit.

26 U.S.C. § 6343(a) (1954), entitled "Release of Levy," provides as follows:

> It shall be lawful for the Secretary, under regulations prescribed by the Secretary, to release the levy upon all or part of the property or rights to property levied upon where the Secretary determines that such action will facilitate the collection of the liability, but such release shall not operate to prevent any subsequent levy.

Unfortunately, the statute and the regulations thereunder, *see* Treas.Reg. §§ 301.-6343–1(a)(1)–(b)(3), delineate only circumstances in which a levy may be released, but do not establish a procedure for such release. *Cf.* 26 U.S.C. § 6325 (1954 & Supp.1985) (procedure for release of tax lien). Although the genesis of the Mississippi Mills arrangement is murky, the levy clearly would not have been "released" unless the contemporaneous agreement for manufacture and sale existed. Therefore, the question is whether a strings-attached release constitutes a "release of levy" under 26 U.S.C. § 6343(a).

The plaintiff strenuously argues that a "release" is a giving up or an abandonment and therefore may not be conditioned upon an agreement for transportation, manufacture, and sale. The regulations under 26 U.S.C. § 6343, which are valid unless unreasonable and plainly inconsistent with the statute, *see Thor Power Tool Co. v. C.I.R.*, 439 U.S. 522, 533 n. 11, 99 S.Ct. 773, 781 n. 11, 58 L.Ed.2d 785, 796 n. 11 (1979), clearly indicate that a release may be conditioned upon the provision of a substitute for the property levied on, *see, e.g.*, Treas. Reg. §§ 301.6343–1(a)(2)(i)-(v) (release of levy conditioned respectively on escrow arrangement, bond, payment of amount of United States' interest in property, assignment of salaries and wages, and installment payment arrangements) or the performance of some other action, *see* Treas. Reg. § 301.6343–1(a)(2)(vi) (release of levy conditioned on extension of statute of limitations). Thus, it appears that a release of

a levy might be conditioned upon the taxpayer agreeing to send his own property to another factory for manufacture, sale, and satisfaction of a tax liability. However, this is distinguishable from a taxpayer obtaining a release of a levy on his property by substituting property which both the taxpayer and the I.R.S. knew or should have known was owned by a third party. In the latter case, the taxpayer is not in a status quo, but has gained a windfall at the expense of a third party. The court concludes that such a strings-attached release is not a "release" under 26 U.S.C. § 7426. Accordingly, the property in issue in the present case was not validly released, and jurisdiction exists under 26 U.S.C. § 7426.

■ Inasmuch as jurisdiction exists under 26 U.S.C. § 7426, the court must determine whether a "wrongful levy" occurred whereby Baddour is entitled to recovery. The statute by its terms contains two prerequisites to application: (1) the plaintiff must have an interest in or lien on the property in issue, and (2) the levy must be wrongful. *Flores v. United States*, 551 F.2d 1169, 1171 (9th Cir.1977). With respect to the first prong, the plaintiff has clearly demonstrated his interest in the property levied on. With regard to the second prong, "wrongful" refers to "a proceeding against property which is not the taxpayer's." S.Rep. No. 1708, 89th Cong., 2d Sess. 30, *reprinted in* 1966 U.S.Code Cong. & Ad.News 3722, 3751. Furthermore, relief under this statute is conditioned upon a finding that the property levied on did not belong to the taxpayer. *Id.* at 3752. In the present case, the parties do not dispute and the court specifically finds that the property in issue did not belong to the taxpayer Brame but rather was owned by Baddour; therefore, the court concludes that wrongful levy occurred in this case and the plaintiff is entitled to recovery. *Cf. Rosenblum v. United States*, 549 F.2d 1140, 1145 (8th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977) (statute redresses wrong to third party when his property taken to satisfy another's tax liability).

■ 26 U.S.C. § 7426(b)(2) concerns the available forms of relief for a wrongful levy. Although subparagraph (c) of the statute was recently amended with regard to wrongful levies occurring after December 31, 1982, the statute in effect at the time of the wrongful levy on April 23, 1982 provided as follows:

> If the court determines that such property has been wrongfully levied upon, the court may—
>
> (A) order the return of specific property if the United States is in possession of such property;
>
> (B) grant a judgment for the amount of money levied upon; or
>
> (C) grant a judgment for an amount not exceeding the amount received by the United States from the sale of such property.

For the purposes of subparagraph (C), if the property was declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

Relief is not proper in the present case under 26 U.S.C. § 7426(b)(2)(A), since the specific property levied on is no longer in existence. Furthermore, although 26 U.S.C. § 7426(b)(2)(B) appears to allow recovery for the amount of the assessment, it has been limited to cases wherein a specific sum of money is levied on. *See, e.g., Flores v. United States*, 551 F.2d at 1173; *cf.* S.Rep. No. 1708, 89th Cong., 2d Sess. 30, *reprinted in* 1966 U.S.Code Cong. & Ad. News at 3751 (relief for wrongful levy on money limited to amount of money levied on). Thus, Baddour may recover only under 26 U.S.C. § 7426(b)(2)(C), which deals with an actual or deemed sale of the property.

28 U.S.C. § 7426(b)(2)(C) was amended, effective for levies after December 31,

1982, to provide that upon a wrongful levy, the court may,

> (C) if such property was sold, grant a judgment for an amount not exceeding the greater of—
>> (i) the amount received by the United States from the sale of such property, or
>> (ii) the fair market value of such immediately before the levy.

*Id.* Inasmuch as the levy in issue took place on April 23, 1982, prior to the effective date of the amendment, the parties dispute the proper measure of recovery, *i.e.,* the fair market value of its property immediately prior to the levy, which allegedly is $64,775.00, or the $1,502.00 received by the United States from sale of the goods. Specifically, the parties dispute whether the statutory amendment allowing recovery of fair market value codifies existing law or excludes such recovery by negative inference.

The statutory boilerplate language of 26 U.S.C. § 7426(b)(2), which was unaltered by the amendment, addresses the relationship between a "deemed sale" under 26 U.S.C. § 6335(e) and the recovery provisions of 26 U.S.C. § 7426(b)(2)(C). 26 U.S.C. § 6335(e), regarding the manner and conditions of a sale of seized property, provides that the Secretary shall set a "minimum price" for the property, *see* 26 U.S.C. § 6335(e)(1); thereafter, the property shall be sold either at public auction or public sale with sealed bids, *see* 26 U.S.C. § 6335(e)(2). If the minimum price is not bid, the United States shall be treated as having purchased the property at such amount. *See* Treas.Reg. § 301.6335–1(c)(3). Thus, the boilerplate language of 26 U.S.C. § 7426(b)(2) provides that, upon a deemed sale, the minimum price shall be considered the "amount received by the United States" for purposes of 26 U.S.C. § 7426(b)(2)(C). Furthermore, if the provisions of 26 U.S.C. § 6335(e) are not followed and no minimum price is set, case law indicates that fair market value at the time the property should have been sold pursuant to that statute shall be considered the minimum price. *See United*

*States v. Pittman,* 449 F.2d 623, 628 (7th Cir.1971) (section 6335 procedures not followed; taxpayer entitled to credit in amount of fair market value at time property should have been sold). Accordingly, this court concludes that 26 U.S.C. § 7426(b)(2)(C) before amendment allows recovery at an amount equal to the fair market value of the property at the time the property should have been sold pursuant to 26 U.S.C. § 6335. Furthermore, such measure of damages is proper in the present case so as to provide complete relief to the plaintiff. In the absence of any evidence regarding a change in value from the time of the levy to the time at which the property should have been sold, the court hereby determines that the plaintiff is entitled to an award of $64,775.00 from the wrongful levy.

### 2. The Memphis Levy

█ With respect to the Memphis levy, the parties agree that Brame's goods were levied on, that Baddour stored the goods, and that the IRS gave no further instructions with respect to the goods. Although the parties vigorously dispute whether the agent Posey represented that Baddour was entitled to reasonable costs for storage, this factual issue is irrelevant. Baddour undisputedly incurred storage costs at the behest of the IRS; therefore, Baddour is entitled to compensation for such expenses. However, since Baddour stored the goods in its own trailer, the alleged fair rental value of $25.00 per day since April 23, 1982, the date of the levy, sought by Baddour is actually its opportunity cost of possible rental to third parties. The court declines to award such lost opportunity costs and instead concludes that $10,000.00 is a reasonable award to the plaintiff for the storage of the goods. The court assumes that the IRS will take immediate measures either to secure possession of the goods or to release the levy so as to avoid further liability.

### *Liability of Michael Posey*

In addition to the claims against the IRS, the plaintiff seeks damages from Michael

Posey personally for his alleged violation of its constitutional rights. *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 390–97, 91 S.Ct. 1999, 2001–05, 29 L.Ed.2d 619, 623–27 (1971) (cause of action for money damages stated against individual government officials for constitutional violations). The defendant Posey asserts that he possesses either qualified or absolute immunity from this damages action.

■ Absolute immunity is closely related to the doctrine of prosecutorial discretion. Federal and state prosecutors possess absolute immunity from suits under 42 U.S.C. § 1983 for decisions arising out of their prosecutorial function. *See Imbler v. Pachtman,* 424 U.S. 409, 420, 96 S.Ct. 984, 990, 47 L.Ed.2d 128, 137–38 (1976). Furthermore, federal officials whose duties are analogous to those of a prosecutor possess absolute immunity from damage suits. *Butz v. Economou,* 438 U.S. 478, 508–17, 98 S.Ct. 2894, 2911–16, 57 L.Ed.2d 895, 917–23 (1978). For example, an agency official whose duties require him to decide whether to initiate an administrative proceeding is absolutely immune from liability for damages arising from his decision to authorize such proceeding. *Id.* at 515–16, 98 S.Ct. at 2915–16, 57 L.Ed.2d at 921–22.

■ Although the defendant Posey performs some duties which are analogous to a prosecutor and for which he therefore possesses absolute immunity, *see, e.g., Stankevitz v. Internal Revenue Service,* 640 F.2d 205, 206 (9th Cir.1981) (absolute immunity of IRS agents for prosecutorial duties), the alleged transgressions in the present case are not related to his prosecutorial function. Rather, the actions complained of relate to the manner in which Posey performed an unauthorized release. Accordingly, Posey does not possess absolute immunity in the present case.

■ However, a federal official whose duties are not functionally equivalent to a prosecutor nevertheless possesses qualified immunity upon a satisfactory demonstration of reasonable grounds for a belief in the validity of his actions formed at the time of the action and in light of all the circumstances, coupled with a good faith belief in the validity of the action. *Scheur v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90, 103 (1973). Thus, a federal official is not liable for a mere mistake in judgment, whether the mistake is one of fact or law. *Butz,* 438 U.S. at 507, 98 S.Ct. at 2911, 57 L.Ed.2d at 916. Furthermore, qualified immunity is defeated only if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the plaintiff's constitutional rights, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396, 409 (1982).

■ In determining whether qualified immunity exists in a particular case, if the federal defendant demonstrates that the action giving rise to the claim for damages occurred pursuant to the performance of his duties and within the scope of his discretionary authority, he has made a prima facie case for entitlement to immunity from damages. *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir.1981). Thereafter, the plaintiff bears the burden of demonstrating that the defendant did not act in "good faith," *i.e.,* that the defendant knew or reasonably should have known that he was violating the plaintiff's constitutional rights or that the defendant maliciously intended to harm the plaintiff. *Id.* at 1126. *Cf. Rutherford v. United States,* 702 F.2d 580, 584 (5th Cir.1983) (qualified immunity asserted by IRS agent who allegedly harassed taxpayer plaintiffs into payment of unowed taxes).

■ In the instant case, Posey undoubtedly possesses qualified immunity. Posey's actions undisputedly were taken pursuant to his duties as a revenue officer. Furthermore, Posey reasonably could have believed that Brame had an interest in the goods levied on for at least the value of its work performance; thus, Posey's acts were

within the scope of his discretionary authority and establish a prima facie case for immunity. Furthermore, the plaintiff has failed to adequately demonstrate either a lack of good faith or a malicious intent by Posey. Thus, the court determines that recovery from the defendant Posey in this case is barred by the doctrine of qualified immunity.

Let an order issue accordingly.