**John B. CAMERON, Jr.,
Plaintiff-Appellant,**

v.

**INTERNAL REVENUE SERVICE, et al., Defendants-Appellees.**

No. 84–2775.

United States Court of Appeals,
Seventh Circuit.

Submitted June 26, 1985.

Decided Sept. 6, 1985.

John B. Cameron, Jr., pro se.

R. Lawrence Steele, Jr., U.S. Atty., Hammond, Ind., David H. Miller, U.S. Atty., Fort Wayne, Ind., Jonathan S. Cohen, Kenneth S. Green, Appellate Section, Dept. of Justice, Tax Div., Washington, D.C., for defendants-appellees.

Before BAUER, POSNER and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The plaintiff brought this suit against the Internal Revenue Service and two of its agents, seeking injunctive relief and $15 million in damages. The district court granted summary judgment for the defendants, 593 F.Supp. 1540 (N.D.Ind.1984), and the plaintiff has appealed.

This is a fairly typical "tax protester" suit. The plaintiff, who was not represented by counsel in the district court and is not represented by counsel in this court, challenges the legitimacy of the federal income tax on the basis of such irrelevant propositions as that wages are compensation for services rendered and hence not profits in the sense of windfalls. This is true; wages—most wages anyway—are compensation, rather than windfalls; but the income tax is a tax on income in general, not just on windfall income.

The only novel element in this case, and the only respect in which we cannot rest our decision on the district court's opinion, comes from the plaintiff's efforts to get damages from the Internal Revenue

Service agents who processed his tax returns, on the ground that the agents did so in bad faith, as by turning over his file for collection "instead of getting to the bottom of the problem," scheduling appointments with him at inconvenient times and canceling appointments without notice, and making an arithmetical error in the IRS's favor. Stronger allegations are made for the first time on appeal—that the defendants "are still using force, extortion, threats etc. in hopes they can force him, or scare him, into becoming that of a taxpayer status"—but these come too late.

■ The district court held that the agents were shielded from liability for damages arising out of the performance of their duties as internal revenue agents because they have absolute immunity from suit based on such performance. But it is clear from *Mitchell v. Forsyth*, —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), which came down after the district court's decision in the present case and held that the Attorney General of the United States did not have absolute immunity, that IRS agents do not have absolute immunity either. Judges and other adjudicators, and prosecutors, have absolute immunity, but apparently the only official of the executive branch who has such immunity even when not engaged in adjudication or prosecution is the President of the United States. Although the agents in this case would be immune if they acted in good faith (which means, in this context, with reason to believe that they were acting lawfully, see *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982)), the district judge did not make a finding on their good faith, having thought it unnecessary to reach the question.

■ But the outcome of the case is unaffected by the district judge's error about absolute immunity. An issue more basic than immunity is whether the federal courts are authorized to award damages to a taxpayer who complains that internal revenue agents badgered or harrassed him in trying to collect taxes from him. We think the answer is "no," at least under the facts presented here. It is true that *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), created a private damage remedy for violations of the Fourth Amendment and that the remedy has been assumed to embrace violations of the Fourth Amendment by internal revenue agents. See, e.g., *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 360, 97 S.Ct. 619, 632, 50 L.Ed.2d 530 (1977); *Capozzoli v. Tracey*, 663 F.2d 654, 656 n. 1 (5th Cir.1981). But this taxpayer is not complaining about a search or seizure. It is also true that some cases hold, suggest, or assume that the remedy extends to violations of other constitutional rights by such agents, including the right not to be deprived of liberty or property without due process of law. See, e.g., *Hall v. United States*, 704 F.2d 246, 249 n. 1 (6th Cir.1983); *Rutherford v. United States*, 702 F.2d 580, 583–84 (5th Cir.1983); *Stonecipher v. Bray*, 653 F.2d 398, 401–03 (9th Cir.1981); but cf. *Murray v. United States*, 686 F.2d 1320, 1325 n. 7 (8th Cir. 1982). But we shall see that the taxpayer in this case has not shown a deprivation of liberty or property.

If in the course of enforcing the tax laws internal revenue agents ransack people's homes without a warrant, or otherwise violate the Fourth Amendment, the argument for a damage remedy against the agents is a powerful one, since a suit for a tax refund would not be an adequate substitute. The argument is weaker if the claim is that the agents refused to grant a charitable exemption to a religious organization in violation of the First Amendment or deprived the taxpayer of some administrative procedure due him under the due process clause of the Fifth Amendment, for in both of these cases the wrong to the taxpayer can easily be set right through the legal procedures created by the tax code itself. But the argument becomes completely untenable when as in this case the only claim is that the agents made mistakes, subjected the taxpayer to unnecessary inconvenience, failed to explore possibilities for settlement, or otherwise failed to come up to the

highest standards of conduct for government officers dealing with citizens. In an era of heavy taxation, many taxpayers, not merely "tax protesters," feel intense irritation at the federal tax authorities, and the courts would be flooded with frivolous cases if the unavoidable frictions generated by tax collection gave rise to potential damage claims against internal revenue agents. Maybe if the complaint "sketches a portrait of a lawless and arbitrary vendetta fueled by the power of the state, designed to harass by unwarranted intrusion into the minutia[e] of their financial affairs, and intended to abuse by the creation of palpably unfounded claims against their property which they can set to right only by unnecessary litigation," *Rutherford v. United States, supra,* 702 F.2d at 584, the taxpayer can resist a motion to dismiss; but that is not the portrait sketched by the present complaint. Even when liberally construed, this complaint, if true, shows only that internal revenue agents acted in a heavy-handed, insensitive, and careless fashion in processing the taxpayer's tax returns. For such conduct there is no damage remedy.

██ Even assuming with the Fifth Circuit in *Rutherford* that a deliberate campaign to harass a taxpayer could deprive him of his liberty without due process of law, more must be shown than a lack of courtesy, accuracy, and restraint by internal revenue agents in the processing of tax returns. Not every interference with peace of mind is a deprivation of liberty within the meaning of the Constitution. Even a battery by a police officer is not a deprivation of liberty unless circumstances of aggravation are present. See, e.g., *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (Friendly, J.); *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980); *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981); *Davis v. Forrest,* 768 F.2d 257, 258 (8th Cir.1985). Conduct too trivial in its impact on a normal person even to be a common law tort is unlikely to be a deprivation of constitutionally protected liberty. The Constitution must not be trivialized. The plaintiff has alleged at most a border-line case of the common law tort of intentional infliction of emotional distress, and that is not enough to establish a deprivation of liberty. No statutory as distinct from constitutional source for the plaintiff's claim exists.

██ As there is no right alleged here for the violation of which a federal court could grant a remedy, it is unnecessary to consider whether, if there were such a right, a damage remedy should be created to enable its vindication. Courts will not create a damage remedy for the violation of a constitutional right when Congress has created explicit remedies or when a court-created remedy would interfere with the effective functioning of the government. See *Bush v. Lucas,* 462 U.S. 367, 388–90, 103 S.Ct. 2404, 2416–17, 76 L.Ed.2d 648 (1983); *Chappell v. Wallace,* 462 U.S. 296, 303–05, 103 S.Ct. 2362, 2367–68, 76 L.Ed.2d 586 (1983); *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980); *Jones v. Reagan,* 696 F.2d 551, 553 (7th Cir.1983); *Sonntag v. Dooley,* 650 F.2d 904, 906 (7th Cir.1981). Both elements are present here. Congress has given taxpayers all sorts of rights against an overzealous officialdom, including, most fundamentally, the right to sue the government for a refund if forced to overpay taxes, and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against Treasury employees. It is hard enough to collect taxes as it is; additional obstructions are not needed.

██ Thus this suit, insofar as it seeks damages against the individual defendants for excesses in the performance of their official duties, fails to state a claim for the reasons stated above; the other parts of the complaint were dismissed on the correct grounds by the district court. Although the appeal raises one question on which we have thought it useful to comment, the suit as a whole is patently frivolous and we therefore grant the defendants' motion to award them their costs and

attorney's fees incurred in this appeal. The defendants shall file with this court a statement of costs and fees within 15 days.

AFFIRMED.