BADDOUR, INC. and BMC Sales, Inc., Plaintiffs-Appellees-Appellants,

v.

UNITED STATES of America, Defendant-Appellant,

Michael E. Posey, Defendant-Appellee.

No. 85–4595.

United States Court of Appeals, Fifth Circuit.

Oct. 17, 1986.

Nancy G. Morgan, William D. Holmes, Ann Bellandger Durney, Michael L. Paup, Chief, Appellate Sec., Tax Div., Dept. of Justice, Washington D.C., Glen H. Davidson, U.S. Atty., Thomas W. Dawson, Asst. U.S. Atty., Oxford, Miss., for defendant-appellant.

Eugene Greener, Jr., Goodman, Glazer, Greener, Schneider & McQuiston, Memphis, Tenn., Troutt & Moore, Nat G. Troutt, Senatobia, Miss., for plaintiffs-appellees-appellants.

Before GEE and ROBERT MADDEN HILL, Circuit Judges, and EDWIN F. HUNTER, Jr., * District Judge.

## OPINION

EDWIN F. HUNTER, Jr., District Judge:

Baddour, Inc., brought this wrongful levy suit against the United States of America and Michael Posey, an IRS agent. Damages are claimed for losses allegedly sustained when its property, certain soft goods located in a taxpayer's plant, was seized to satisfy taxpayer's liability. Following a bench trial, the district court concluded that recovery against Posey, individually was barred by the doctrine of qualified immunity. It held, however, that

* District Judge of the Western District of Louisiana, sitting by designation.

Baddour was entitled to recover under 26 U.S.C.A. § 7426(b)(2) (West 1967), *amended by* 26 U.S.C.A. § 7426(b)(2) (West Supp. 1986), in an amount equal to the fair market value of the property at the time that it should have been sold pursuant to 26 U.S.C.A. § 6335 (West 1967).[1] This value was fixed at $64,775. The United States appeals. Baddour appeals from the Posey dismissal.

We AFFIRM in all respects.

## I.

Baddour, Inc. entered into a contract with Brame Manufacturing Co., Inc., the "taxpayer", pursuant to which it periodically shipped raw material for athletic clothing from its facility in Memphis, Tennessee, to the Brame factory in Batesville, Mississippi. Brame manufactured the raw material into finished garments, shipped them to Baddour's pre-arranged purchasers, and received a portion of the purchase price as payment for its manufacturing work.

In late 1981 and early 1982, the IRS assessed Brame for tax delinquencies of more than $170,000. The IRS filed tax liens in Batesville where the Brame factory was located and in Sardis, Mississippi. The IRS agent in charge of the case, cross-appellee Michael E. Posey, then met with Julius Brame, the president and owner of Brame, to ascertain what property was available to satisfy Brame's tax liability. Posey learned that Brame's plant in Batesville contained certain soft goods, work in progress, and completed garments. Based both upon Brame's description of the business arrangement and the absence of a U.C.C. filing statement, Posey concluded that Brame actually had title to the goods. On April 23, 1982, the IRS issued a levy and a Notice of Seizure to Brame and seized the goods in the Batesville factory by placing a padlock on the outside door.[2] Some if not all of the goods inside, seized

to satisfy Brame's tax liability, belonged to Baddour.

Following the seizure, Charles S. Vail, corporate secretary of Baddour, wrote a letter to Posey detailing their ownership of the property. Vail insisted that the taxpayer "had no interest in the goods," that Baddour "bought the goods, paid for the goods, and had them shipped" to the taxpayer's plant; that the taxpayer was "to do certain work to said goods and ship them" to Baddour's customers, and that "the transaction was never intended as a security transaction" because the goods were Baddour's at all times. Posey then reached an understanding with Brame and Fred Klyce, president of Panola County Bank (the holder of a security interest), that if the seizure were released, the goods would be transported to Mississippi Mills in Sardis, Mississippi, where manufacture would be completed. The finished goods would be sold, and the net proceeds disbursed 50 percent to the Internal Revenue Service, 25 percent to Panola County Bank and 25 percent to Brame for sales expenses. The understanding was memorialized in a letter to Posey from Klyce dated May 25, 1982. On that same day, Posey removed the padlock and seizure notice from taxpayer's premises and signed the notice indicating that the goods had been released from the seizure. The document was also signed by Klyce, as "Agent for Brame," acknowledging receipt of the property and that the property was in the same condition as it had been prior to seizure. The soft goods were then removed to Mississippi Mills where some of the goods were made into finished products and sold. The United States eventually received $1,502 as its share of the sale proceeds pursuant to the agreement with Brame and Klyce.

Following the "release," Baddour discovered that its goods were no longer in the Brame factory. They immediately contacted Posey to ascertain its whereabouts. Po-

---

**1.** The United States dropped its appeal as to that part of the District Court's judgment that awarded plaintiffs $10,000 with regard to a levy on property in Memphis, Tennessee.

**2.** Another padlock had previously been placed on the door on April 16, 1982, by Panola County Bank, which had a financing statement on file asserting a security interest in Brame's property.

sey replied merely that the goods had been "released to the taxpayer." Only after the commencement of litigation did Baddour learn of the contemporaneous agreement for manufacture and sale.

The district court held that there had been a wrongful levy and that the strings-attached release was not a release under 26 U.S.C.A. § 6343(a) (West Supp.1986). It then analyzed the relationship between a "deemed sale" under 26 U.S.C.A. § 6335(e) regarding the manner and conditions of the sale of seized property, and the recovery provisions of 26 U.S.C.A. § 7426(b)(2)(C). The district court concluded that if the provisions of 26 U.S.C.A. § 6335(e) are not followed and no "minimum" price is set, then the fair market value at the time that the property should have been sold pursuant to statute shall be considered the minimum price.

## II.

■ 26 U.S.C.A. § 7426(a)(1) provides in part:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

This statute constitutes a waiver by the United States of its sovereign immunity to suit; if the wrongful levy is released prior to the filing, no waiver exists and the court acquires no jurisdiction. *See Nickerson v. United States*, 513 F.2d 31 (1st Cir.1975). To assess the jurisdictional issue, we are obliged to answer this inquiry: Was the levy released prior to the filing of this suit?

26 U.S.C.A. § 6343(a), entitled "Release of Levy," provides:

> It shall be lawful for the Secretary or his delegate, under regulations prescribed by the Secretary or his delegate, to release the levy upon all or part of the property or rights to property levied upon where the Secretary determines that such action will facilitate the collection of the liability, but such release shall not operate to prevent any subsequent levy.

Unfortunately, the statute and the regulations, *see* Treas.Reg. §§ 301.6343–1(a)(1)–(b)(3), delineate only circumstances in which a levy may be released. They do not establish a procedure for release. *Cf.* 26 U.S.C.A. § 6325 (West Supp.1986) (procedure for release of tax lien). Although the genesis of the Mississippi Mills-Posey-Brame arrangement is murky, the levy clearly would not have been "released" in the absence of the contemporaneous agreement for manufacture and sale. The issue quickly narrows. Does the strings-attached release constitute a "release of levy" under § 6343(a)?

■ Plaintiff strenuously argues that a "release" is a giving up or an abandonment and therefore may not be conditioned upon an agreement for transportation, manufacture, and sale. The regulations under § 6343, clearly indicate that a release may be conditioned upon the provision of a substitute for the property levied on, *see, e.g.,* Treas.Reg. §§ 301–6343–1(a)(2)(i)–(v) (release of levy conditioned respectively on escrow arrangement, bond, payment of amount of United States' interest in property, assignment of salaries and wages, and installment payment arrangements) or the performance of some other action. There are sound reasons for permitting a release to be conditioned upon the taxpayer agreeing to send his own property to another factory for manufacture, sale, and satisfaction of a tax liability. However, neither reason, common sense nor equity can justify a strings-attached release of property which was owned by a third party. We fully agree with the district court that a strings-attached release is not a "release" under § 6343(a). The property was not validly released. Jurisdiction exists under 26 U.S.C.A. § 7426(a)(1).

The statute in effect at the time of the wrongful levy on April 23, 1982 provided in pertinent part:

(b) *Adjudication.*—The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

\* \* \* \* \* \*

(2) *Recovery of property.*—If the court determines that such property has been wrongfully levied upon, the court may—

(A) order the return of specific property if the United States is in possession of such property;

(B) grant a judgment for the amount of money levied upon; or

(C) grant a judgment for an amount not exceeding the amount received by the United States from the sale of such property.

For the purposes of subparagraph (C), if the property was declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

26 U.S.C.A. § 7426(b)(2).

Relief is not proper under § 7426(b)(2)(A), because the specific property levied on is no longer in existence. Moreover, although § 7426(b)(2)(B) appears to allow recovery for the amount of the assessment, it has been limited to instances where a specific sum of money is levied on. *See, Flores v. United States*, 551 F.2d 1169 (9th Cir.1977); *cf.* S.Rep. No. 1708, 89th Cong., 2d Sess. 30, *reprinted in* 1966 U.S. Code Cong. & Ad.News 3722, 3751 (relief for wrongful levy on money limited to amount of money levied on). Baddour may recover only under § 7426(b)(2)(C), which deals with an actual or deemed sale of the property.

§ 7426(b)(2)(C) was amended, effective for levies after December 31, 1982, to provide that upon a wrongful levy, the court may,

(C) if such property was sold, grant a judgment for an amount not exceeding the greater of—

(i) the amount received by the United States from the sale of such property, or

(ii) the fair market value of such property immediately before the levy.

*Id.* Inasmuch as the levy in issue took place on April 23, 1982, prior to the effective date of the amendment, the parties dispute the proper measure of recovery, *i.e.*, the fair market value of its property immediately prior to the levy, which allegedly is $64,775 or the $1,502 received by the United States from sale of the goods. Specifically, the parties dispute whether the statutory amendment allowing recovery of fair market value codifies existing law or excludes such recovery by negative implication.

The statutory boilerplate language of § 7426(b)(2), which was unaltered by the amendment, addresses the relationship between a "deemed sale" under § 6335(e) and the recovery provisions of § 7426(b)(2)(C). Our inquiry regards the manner and conditions relating to a sale. The Secretary is to set the "minimum price." § 6335(e)(1). Thereafter, the property is to be sold either at public auction or public sale with sealed bids. § 6335(e)(1). If the minimum price is not bid, the United States shall be treated as having purchased the property at such amount. *See* Treas.Reg. § 301.6335–1(c)(3). The boilerplate language of § 7426(b)(2) provides that, upon a deemed sale, the minimum price shall be considered the "amount received by the United States" for purposes of § 7426(b)(2)(C). Furthermore, if the provisions of § 6335(e) are not followed and no minimum price is set, case law indicates that fair market value at the time the property should have been sold pursuant to that statute shall be considered the minimum price. *United States v. Pittman*, 449 F.2d 623, 628 (7th Cir.1971) (section 6335 procedures not followed; taxpayer entitled to credit in amount of fair market value at time property should have been sold). § 6335 protects the property owner in two important

ways. First, it requires the property be sold promptly. Second, it requires an appraisal to set a minimum price. Where the law protects the taxpayer himself when his property is seized and sold, surely it must protect an innocent third party whose property was wrongfully seized and sold to pay the debt of another.

■ The district court held that in the absence of any evidence regarding a change in value of plaintiffs' property from the time of the levy to the time at which the property should have been sold by the government, the plaintiffs are entitled to an award of $64,775 being the fair market value of the property at the time of the levy. This finding of fact is amply supported by the record. We find no error in the district court's award of damages against the United States under the unique facts of this case.

### III.

In its amended complaint, Baddour sought to hold Revenue Officer Posey individually liable, asserting that he acted "in bad faith and violated [Baddour's] rights under the Fourth and Fifth Amendments of the United States Constitution" in failing to follow the requirements of the Internal Revenue Code. Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in appropriate situations federal courts may fashion a damages remedy for violation of constitutional rights by government agents. The Supreme Court "has expressly cautioned, however, that such a remedy will not be available when 'special factors counselling hesitation' are present." *Chappell v. Wallace*, 462 U.S. 296, 298, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983) (quoting *Bivens*, 403 U.S. at 396, 91 S.Ct. at 2005).

Following a bench trial, the District Court dismissed the damage claim insofar as it seeks damages against the individual defendant for alleged excesses in the performance of his official duties. The record lends overwhelming support to the district judge's finding:

In the instant case, Posey undoubtedly possesses qualified immunity. Posey's actions undisputedly [sic] were taken pursuant to his duties as a revenue officer. Furthermore, Posey reasonably could have believed that Brame had an interest in the goods levied on for at least the value of its work performance; thus, Posey's acts were within the scope of his discretionary authority and establish a prima facie case for immunity. Furthermore, the plaintiff has failed to adequately demonstrate either a lack of good faith or a malicious intent by Posey. Thus, the court determines that recovery from the defendant Posey in this case is barred by the doctrine of qualified immunity.

*Baddour, Inc. v. United States*, 614 F.Supp. 159, 166–67 (N.D.Miss.1985).

We must view the problem from a different legal perspective than did the district court, but reach the same result. In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court reformulated the standard for determining qualified immunity. Prior to *Harlow*, the qualified or "good faith" immunity test had two prongs: one objective and one subjective. *See, e.g., Wood v. Strickland*, 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975). Under the objective prong, an official was not shielded from liability if he "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [plaintiffs]." *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2737. An official would be denied immunity under the subjective prong if "he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Id.* Because of its concern that the subjective good faith component of qualified immunity would entail wide-ranging discovery into the official's motivation, the Court in *Harlow* eliminated the subjective prong. 457 U.S. at 815–19, 102 S.Ct. at 2736–39. Instead, it fashioned a new test for qualified immunity as follows: "[G]overnment officials performing

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738 (emphasis added). No other inquiry is relevant. *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984); *See also Saldana v. Garza,* 684 F.2d 1159, 1165 (5th Cir.1982).

■ Posey did not violate any of Baddour's clearly established constitutional rights. The levy in question did constitute a seizure. 26 U.S.C.A. § 6331(b) (West Supp.1986). However, any doubts as to its validity were resolved by the Supreme Court in *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). There, the Supreme Court noted that where the government seizes property to collect delinquent taxes, the seizure, if it involves no invasion of one's premises, does not violate the Fourth Amendment. 429 U.S. at 351–52, 97 S.Ct. at 627–28.

■ Baddour's Fifth Amendment argument is similarly devoid of substance. A seizure under § 6331 is provisional and does not determine the rights of third parties until after the levy is made in a post seizure administrative or judicial hearing. The Commissioner's summary assessment and collection activities do not run afoul of the due process clause of the Fifth Amendment, so long as there is an adequate opportunity for post-collection review of his actions. Indeed, the Supreme Court has specifically upheld the constitutionality of the Internal Revenue Service levy procedures in a variety of contexts. *Commissioner of Internal Revenue v. Shapiro,* 424 U.S. 614, 630–32 n. 12, 96 S.Ct. 1062, 1072 n. 12, 47 L.Ed.2d 278 (1976); *Fuentes v. Shevin,* 407 U.S. 67, 91–92, 92 S.Ct. 1983,

1999–2000, 32 L.Ed.2d 556 (1972); *Phillips v. Commissioner,* 283 U.S. 589, 593–600, 51 S.Ct. 608, 610–13, 75 L.Ed. 1289 (1931); *G. M. Leasing Corp. v. United States,* 429 U.S. at 352 n. 18, 97 S.Ct. at 628 n. 18; *United States v. National Bank of Commerce,* 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). Thus § 6331 has withstood numerous constitutional challenges predicated on the lack of preseizure judicial hearings. *Myers v. United States,* 647 F.2d 591 (5th Cir.1981). A person alleging that his property has been wrongfully levied upon has an opportunity for "full judicial consideration, in an adversary context, of the validity of the levy." More than that the Constitution does not guarantee. *Id.* at 603.

It is apparent that plaintiff's complaint utterly failed to state any claim upon which relief could be granted against Posey cognizable under either the Fourth Amendment or the Fifth Amendment. In order to impose personal liability upon the agent, plaintiff was not only required to show that the seizure was illegal, it was necessary that they show that the seizure was so illegal as to violate clearly established law. In this case and on these facts the plaintiff clearly has not done so.[3]

Were Baddour's failure to overcome Posey's qualified immunity defense not enough, the damages suit against Posey could have been dismissed for failure to state a claim on the ground that Baddour's statutory remedies for correcting this situation were adequate, thus obviating the need for a court-created damages remedy. Related to this proposition is the recognition that creation of a damages remedy under circumstances where Congress has provided for corrections of tax collection errors could wreck havoc with the federal tax system. As the Seventh Circuit recently articulated in *Cameron v. Internal Rev-*

---

**3.** Plaintiffs argued that "the crux" of its case against Posey is that he "did not act in good faith." This explains the district judge's finding as to that issue. In reaching our decision, we have applied the qualified immunity standard enunciated in *Harlow, supra.* No other "circumstances" are relevant to the issue of quali-

fied immunity. *Davis v. Scherer, supra.* However, in the case now before us, there was no evidence that could support a finding that Posey acted with personal malice. Thus, even under the pre-Harlow "two pronged" qualified immunity test, this defendant would be entitled to a dismissal.

*enue Service,* 773 F.2d 126 (7th Cir.1985), a complaint for damages based upon an alleged constitutional tort may be dismissed for failure to state a claim *either* because (1) no constitutional source for the plaintiff's claim exists, *or* (2) "Congress has created explicit remedies," *or* (3) "a court-created remedy would interfere with the effective functioning of the government." 773 F.2d at 129. *See also Bush v. Lucas,* 462 U.S. 367, 388–90, 103 S.Ct. 2404, 2416–18, 76 L.Ed.2d 648 (1983). Thus, even assuming that the complaint states a claim that is cognizable under the Constitution, no cause of action for damages may be maintained if either the second or third elements set forth above are present. The *Cameron* court observed in this regard that:

> Congress has given taxpayers all sorts of rights against an overzealous officialdom, including, most fundamentally, the right to sue the government for a refund if forced to overpay taxes, and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against Treasury employees. It is hard enought to collect taxes as it is; additional obstructions are not needed.

773 F.2d at 129.

The instant case plainly presents a situation where Baddour had available "all sorts of rights against an overzealous officialdom." It is a case where "special factors counselling hesitation are present." *Chappell v. Wallace,* 462 U.S. 296, 298, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983). The Regulations under § 6343(b) specifically provide that a written request for the return of property wrongfully levied upon may be submitted to the District Director. Treas.Reg. Sec. 301.6343–1(b)(2). Judicial review of a levy is available in an action, such as this, brought pursuant to § 7426(a). Baddour could have sought immediate review of Revenue Officer Posey's

collection actions from the appropriate Internal Revenue Service District Director, in addition to bringing this wrongful levy action. To open up an entirely new avenue of relief resulting in the personal liability of Internal Revenue Service employees would serve to hamper the ability of such employees to perform a function that is a difficult one and one that is vital to our nation.

Baddour relies on *Rutherford v. United States,* 702 F.2d 580 (5th Cir.1983), to justify its request for damages against Posey. Its reliance is misplaced. There, it was alleged that a revenue agent had deliberately harassed the taxpayers with tax assessments that he knew to be unjustified. This court viewed the taxpayers' complaint as sketching "a portrait of lawless and arbitrary vendetta," and of an intentional campaign designed to abuse the taxpayers for purely personal reasons. 702 F.2d at 584. In those circumstances, this court suggested that taxpayers *might* be entitled to relief beyond that available in a refund suit to compensate them both for their mental anguish and for their legal expenses in recovering the taxes.[4] Accordingly, it remanded the case to the District Court for a determination whether taxpayers' clearly established substantive due process rights had been violated. 702 F.2d at 585.

In this case, by contrast, there was not the slightest hint of a deliberate, personally-motivated campaign to harass by means of the tax collection process. Posey's actions were solely based upon his belief that the taxpayer had an interest in the soft goods from which the Government could realize the delinquent taxes. None of the evidence submitted remotely suggests that Posey was attempting to make the type of deliberately improper use of the collection process that was alleged in *Rutherford.*

Congress has provided that erroneously collected taxes are to be refunded with interest at a statutorily-prescribed rate. 26 U.S.C.A. §§ 6611, 6621, 6622 (West Supp.

---

**4.** The Court's reasoning on this point was recently questioned by the Seventh Circuit in *Cameron v. Internal Revenue Service, supra* at

129. *See also Harlow v. Fitzgerald, supra,* 457 U.S. at 815–19, 102 S.Ct. at 2736–39.

1986). Congress has also provided that successful efforts in the courts for the recovery of federal taxes may result in the award of attorney's fees. 26 U.S.C.A. § 7430 (West Supp.1986). Neither the Constitution nor the Internal Revenue Code requires more relief than this.

■ There are sound reasons not to subject the taxing system to an extra-statutory measure of damages without express Congressional authority. Express authority on the subject negatives any implied Congressional intent to do so. Baddour's action is explicitly barred by 26 U.S.C.A. § 7426(d) (West Supp.1986). That section provides: "No action may be maintained against any officer or employee of the United States ... with respect to any acts for which an action could be maintained under this section." This is as clear a statement as there can be that Congress did not intend an IRS agent, such as Posey, to be a defendant with respect to any acts for which an action could be maintained under § 7426. Since this is both a suit brought against the United States pursuant to § 7426 and one against an employee of the United States with respect to the levy on Baddour's property, it follows that the plain language of § 7426(d) necessarily precludes the claim against Posey.

Having carefully considered the record and all of Baddour's arguments, we find that Posey is entitled to qualified immunity.

AFFIRMED.