**Linda NELSON, Plaintiff,**

v.

**Steven SILVERMAN, Defendant.**

**Civ. No. 88–0930 (AJB).**

United States District Court, S.D. California.

June 6, 1995.

Mark R. Moore, La Mesa, CA, for plaintiff.

Robert H. Plaxico, U.S. Dept. of Justice, Office of U.S. Atty., San Diego, CA, Greg Addington, John P. Pirkle, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

Memorandum Decision Granting Defendant's Motion Under Fed.R.Civ.P. 50(a) for Judgment as a Matter of Law

BATTAGLIA, United States Magistrate Judge.

This case came on for jury trial on May 15, 1995.[1] Defendant, Steven Silverman, submitted a Motion for Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50(a) following the Plaintiff's case in chief on the issue of liability and on the issue of qualified immunity.[2] The Plaintiff in this case presented three theories of recovery under a Bivens[3] Complaint: (1) Defendant violated her

---

**1.** The case was tried before a Magistrate Judge, by consent, pursuant to 28 U.S.C. § 636(c)(1).

**2.** On Motion of the Defendant, the case was bifurcated for trial pursuant to Fed.R.Civ.P. 42(b).

**3.** *Bivens v. Six Unknown Federal Narcotic Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Fourth Amendment right of freedom from unreasonable seizure; (2) Defendant violated her Fifth Amendment right to procedural due process; and (3) Defendant violated her Fifth Amendment right to substantive due process by abusive tax collection procedures. This case also involves a claim and defense by the Defendant that he was entitled to qualified immunity.[4]

### STANDARD FOR THE MOTION

Rule 50(a) of the Federal Rules of Civil Procedure provides, in part:

> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

If there is no substantial evidence to support the claim, the Court must direct a verdict. *Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.,* 498 F.2d 1137 (9th Cir. 1974); *Cleary v. National Distillers and Chemical Corp.,* 505 F.2d 695 (9th Cir.1974).

The Rule 50(a) motion brings into focus whether the evidence presented at trial is sufficient to create an issue of fact for the jury or permits the Court to enter judgment as a matter of law and is solely a question of law to be determined by the Court. *Bankers Trust Co. v. Lee Keeling & Assoc., Inc.,* 20 F.3d 1092 (10th Cir.1994). Since relief of this type does deprive the party opposing the motion of a determination of the facts by the jury, the case law indicates it is to be granted not only cautiously, but sparingly. *Honce v. Vigil,* 1 F.3d 1085 (10th Cir.1993).

The federal courts have, however, declined to follow the rule that a scintilla of evidence is enough to create this issue for the jury. *A.B. Small Co. v. Lamborn & Co.,* 267 U.S. 248, 254, 45 S.Ct. 300, 69 L.Ed. 597 (1925). The question is not whether there is no evidence supporting the party against whom the motion is directed but whether the evidence is sufficient for the jury to properly find a verdict for the party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Stated another way, the party with the burden of proof (here, Ms. Nelson, the Plaintiff), on the constitutional violations in the *Bivens* case has to come forward with evidentiary facts that establish the ultimate facts and the degree of proof must be such as to remove these ultimate facts from the field of mere speculation or conjecture; specifically, the jury cannot be allowed to theorize the ultimate facts based on a mere possibility. *See Peterson v. Kennedy,* 771 F.2d 1244, 1256 (9th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986).

Importantly, in making determinations on the Rule 50(a) motion, the Court is not free to weigh the parties' evidence at trial, nor to pass on the credibility of the witnesses. *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Hiltgen v. Sumrall,* 47 F.3d 695 (5th Cir.1995). Finally, the Court may not substitute its judgment of the facts for the judgment of the jury. *Tennant v. Peoria & Pekin Union Ry. Co.,* 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944). Instead, the evidence has to be viewed most favorably to the party against whom the motion is made and that party is to be given the benefit of all reasonable inferences that may be drawn from the evidence. *Galloway v. U.S.,* 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943); *Favorito v. Pannell,* 27 F.3d 716 (1st Cir.1994).

The motion really requires that the evidence offered by the Plaintiff be considered against the backdrop of the applicable law. As to liability, that would be the clearly

---

4. In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court established that federal executive employees sued for constitutional torts are entitled to qualified rather than absolute immunity from suit. *Id.* at 508, 98 S.Ct. at 2911–12. A defendant would be immune from suit if he could establish that his actions were objectively reasonable by reference to clearly established law. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (In *Harlow v. Fitzgerald,* the court eliminated a second requirement established in *Butz* of subjective good faith of the employee leaving only the objective reasonableness element).

established rights under the Fourth and Fifth Amendments of the United States Constitution. Concerning the qualified immunity claim and based on *Act Up!/Portland v. Bagley,* 988 F.2d 868 (9th Cir.1993), this Court is required to determine whether the facts alleged could support an objective belief that Defendant's conduct was reasonable as a matter of law.

## PLAINTIFF'S CLAIMS AND EVIDENCE

The Plaintiff's claims essentially arise under the Fourth and Fifth Amendments. The Fourth Amendment is implicated by Plaintiff's claims of unreasonable seizure of both her money, by virtue of the wage levy at Safeway, and her real property, by virtue of the levy and the notice of levy posted at the Plaintiff's home. The Fifth Amendment claims are two fold. First, Plaintiff claims she was denied procedural due process by lack of notice and opportunity to be heard. Second, the Plaintiff claims a violation of substantive due process based upon the *Bothke*[5] case concerning the concept of a constitutional right to be free from abusive tax collection practices.

The Plaintiff's evidence at trial concentrated on a number of significant areas. The Court finds that the following facts were shown by the Plaintiff at trial, and are the underpinnings of the Court's decision on this motion under Rule 50(a):[6]

### The Form 1058

1. As part of prior collection efforts, joint Form 1058s, notice of intent to levy, were sent to Charles and Linda Franck at Mr. Franck's address.

2. Plaintiff did not see these Form 1058 notices prior to commencement of collection activities by Defendant herein.

3. Between 1980 and 1987, Plaintiff filed tax returns with the IRS, listing her current residence address.

4. During the first meeting between Plaintiff and Defendant at the IRS offices on June 23, 1987, Defendant struck out the "10–day" language from the Form 1058 notice of intent to levy and wrote in his own hand the word "immediately" in its place. He then handed the Form 1058 to Plaintiff.

### Plaintiff's Statements she was not Liable for the Tax

5. Plaintiff repeatedly stated to Defendant throughout the collection activities that she was not liable for the tax.

6. Charles Franck stated to Defendant that the tax was not Plaintiff's responsibility.

7. Charles Franck had an agreement with Plaintiff that he would be responsible for any liability due to the IRS as a result of the amended joint return.[7]

8. In support of her argument that she did not owe the tax, Plaintiff, through her attorney Mr. Gartland, gave Defendant, on July 7, 1987, a copy of her individual (single status) 1979 Form 1040 showing a $78.00 refund due.

9. Plaintiff alleged that she did not consent to the filing of the joint amended return for 1979.[8]

### The Form 900

10. When first presented with the Form 900, which would extend the statute of limitations on collection, during the meeting with Defendant at the IRS offices on June 23, 1987, Plaintiff refused to sign the form and requested more time to discuss the matter with her new husband.[9]

---

**5.** *Bothke v. Fluor Engineers & Constructors, Inc.,* 834 F.2d 804 (9th Cir.1987).

**6.** Except for the stipulated facts, the Court does not pass upon whether these facts are true or whether they would have been rebutted by Defendant in his case-in-chief. For purposes of this motion all facts were viewed in the light most favorable to Plaintiff.

**7.** Admitted fact number 5, Pretrial Order, p. 5, lines 8–10. The plaintiff's evidence at trial was

in conflict as to whether the agreement occurred in 1980 when the return was filed or in 1987 during the tax collection process. This distinction is not material to this decision.

**8.** Admitted fact number 4, Pretrial Order, p. 5, lines 6–7. The Court did not consider material in ruling on this motion the conflicting testimony of Charles Franck on this point.

**9.** Admitted fact number 11, Pretrial order, p. 6, lines 4–10.

11. Defendant gave Plaintiff a blank copy of the Form 900 to take home to review with her husband, and Plaintiff was to let Defendant know by telephone on the morning of June 24, 1987 whether she would agree to sign the waiver form. Defendant told Plaintiff collection activity would begin immediately if she did not agree to extend the statute of limitations by the Form 900.[10]

12. On the morning of June 24, 1987, Plaintiff telephoned Defendant and stated she would not sign the Form 900. Later that morning, Plaintiff changed her mind, signed the blank Form 900 given to her by Defendant, and gave it to Charles Franck. Mr. Franck also signed the blank form and delivered it to the IRS offices.[11]

13. Defendant did not see the form personally until he was in his office several days later.

14. Plaintiff, through her attorney Mr. Gartland, challenged the Form 900 signed in blank by herself and Mr. Franck. That challenge occurred at the time Mr. Gartland and Defendant first met on July 7, 1987 when Mr. Gartland witnessed Defendant filling in the remaining information on the Form 900 signed by Plaintiff and Mr. Franck in blank.

15. At some time thereafter, Mr. Gartland recanted his challenge as to the Form 900, and so advised Defendant several times by the end of July.

16. At some time thereafter, also by the end of July, Defendant received advisory opinions by two persons in the office of the IRS legal counsel that the Form 900 signed in blank by Plaintiff and Mr. Franck and later filled in by him was valid.

17. If the Form 900 was valid, it would have extended the statute of limitations and obviated the need for immediate collection activities.

*The Collection Activity*

18. On June 24, 1987, after receiving the phone call from Plaintiff saying she would not sign the Form 900, Defendant personally served a notice of wage levy on Plaintiff's employer.

19. On August 5, 1987, at the direction of his group manager, Charles Whitlow, Defendant prepared the seizure documents for Plaintiff's residence which were reviewed and approved by his group manager. That afternoon, Defendant seized Plaintiff's interest in her residence by personally serving the seizure documents on Plaintiff. The property was never sold.[12]

*Computer Information Available*

20. Plaintiff alleged that Defendant could have confirmed by computer, in a very short time, that Plaintiff had no liability for the joint 1979 assessment. However, Plaintiff presented no admissible evidence that Defendant could have determined in 2 hours, 2 days, or 2 months, via the IRS computer system, that Plaintiff had no liability on the 1979 joint assessment.[13]

These are the facts which set the factual context for the Court's consideration of Defendant's motion under Fed.R.Civ.P. 50(a).

## PLAINTIFF HAS FAILED TO PRODUCE EVIDENCE SUFFICIENT TO CREATE AN ISSUE FOR THE JURY ON HER FOURTH AMENDMENT CLAIM AS A MATTER OF LAW

As indicated above, the Fourth Amendment is implicated by Plaintiff's claims of unreasonable seizure of both her wages and her home. Plaintiff seems to suggest that there is an issue of fact, which must go to the jury, as to whether Defendant's actions in levying her wages and seizing her home were reasonable. However, the contours of the Fourth Amendment rights are not as broad as simply asserting that there is a right against unreasonable search and seizure, and

10. *Id.*, lines 10–15.

11. Admitted fact number 12, Pretrial order, p. 6, lines 16–21.

12. Admitted facts 16 and 17, Pretrial Order, p. 7, lines 12–18.

13. While Mr. Gartland had some anecdotal experience, certainly, and the Court accepted his testimony that on occasion he received quick answers from the IRS officials from their computers, Mr. Gartland had never operated the IRS computer system or database.

that every seizure connotes a question of reasonableness and thus a jury question.

■ Fourth Amendment case law states that a warrant is not required for the seizure of property in satisfaction of a tax claim by the Internal Revenue Service. *GM Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977); Internal Revenue Code (26 U.S.C.) §§ 6321, 6331. More specifically, in *Maraziti v. First Interstate Bank,* 953 F.2d 520 (9th Cir.1992) the Ninth Circuit Court of Appeals held that to have a violation of the Fourth Amendment, the defendant's seizure of the property of the plaintiff must involve a warrantless invasion of the plaintiff's privacy. Clearly, the Fourth Amendment deals with privacy and the person's freedom from having that privacy interest intruded upon by not only unreasonable seizure, but by unreasonable search.

■ The Plaintiff must establish an unconstitutional invasion of privacy and an objectively reasonable and legitimate expectation of privacy in the areas entered. *Maisano v. Welcher,* 940 F.2d 499 (9th Cir.1991). Now, considering the evidence set forth by the Plaintiff and giving it the inferences required, the Court does not find any privacy interest established or contemplated regarding the wage levy. That's not something that the case law by analogy or otherwise suggests. With regard to the home, which is obviously another area of seizure in this case, the great wealth of authority says that areas of a person's property knowingly exposed to the public is not subject to Fourth Amendment protection and that includes the driveway and doorstep. *United States v. Roberts,* 747 F.2d 537 (9th Cir.1984). Here, the evidence is that the seizure took place at the home by virtue of delivering notice at the door or doorstep and posting notice outside of the home. Plaintiff has not put on evidence that Revenue Officer Silverman went into the home or invaded any area of expected privacy as defined as a matter of constitutional law. As a result, the Court finds that Plaintiff has not met her burden of producing evidence to meet the constitutional requirements by law and as a result the Rule 50(a) motion as to the Fourth Amendment claim is GRANTED.

## PLAINTIFF HAS FAILED TO PRODUCE EVIDENCE SUFFICIENT TO CREATE AN ISSUE FOR THE JURY ON HER PROCEDURAL DUE PROCESS CLAIM AS A MATTER OF LAW

■ The Fifth Amendment provides that a person is not to be deprived of life, liberty or property without due process of law. When the Government takes a person's property, due process does require that the person have notice and opportunity to be heard in a meaningful manner and at a meaningful time. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). But prior notice is not always necessary. *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974).

The Supreme Court has made it very clear that when property is seized by the IRS for federal taxes, postponing judicial inquiry until after the collection of the tax does not violate due process. *Phillips v. Commissioner,* 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). The IRS, by virtue of the Acts of Congress and the statutory mandates it is given, is allowed to summarily collect tax and case law holds that the summary nature of these collection procedures is not a violation of a right to due process because post-collection remedies exist. *United States v. Nat'l Bank of Commerce,* 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985).

*Phillips,* clearly considers procedural due process rights and the limitations on these rights. Justice Brandeis, in writing the opinion, points out that "property rights must yield provisionally to governmental need." 283 U.S. at 595, 51 S.Ct. at 611. In addition,

> [w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. Delay in the judicial determination of property rights is not uncommon where it is essential that government needs be immediately satisfied.

*Id.* at 597 (citations omitted).

■ The only evidence presented by Plaintiff that implicates the procedural due

process clause of the Fifth Amendment is the discussion of the Form 1058 notice of intent to levy. It is clear that the 10–day notice ordinarily required under the Internal Revenue Code may be suspended when the collection of tax is in jeopardy. *Martinez v. United States,* 669 F.2d 568 (9th Cir.1991). In addition, even if Defendant violated the Internal Revenue Code relative to notice, that would not be a constitutional violation. *Rosenberg v. Commissioner,* 450 F.2d 529, 533 (10th Cir.1971); *United States v. Horne,* 714 F.2d 206, 207 (1st Cir.1983).

The tax system does appear to provide a number of post-collection remedies and these have been the main reason, since the *Phillips* case, that the Courts have found that the Government interest allows this type of activity to be viewed as constitutional as long as post-collection remedies are not prejudiced. There is no evidence in the record to suggest that any of Plaintiff's rights to post-collection remedies were impaired by Defendant's conduct or activities.

Clearly, in terms of looking at evidence to support a violation of procedural due process, the Court does not feel that there is a satisfactory showing made for the jury to consider the claim and under Rule 50(a) and prevailing authority as a matter of law, the Defendant is entitled to judgment on this claim.

### PLAINTIFF HAS FAILED TO PRODUCE SUFFICIENT EVIDENCE TO CREATE AN ISSUE FOR THE JURY ON HER SUBSTANTIVE DUE PROCESS CLAIM AS A MATTER OF LAW

[6] Now, the most interesting and perplexing aspect of this case is the substantive due process claim. Plaintiff has asserted that there is a constitutional right to be free of abusive tax collection and that the sum total of the evidence of Defendant's conduct presents a jury question on this claim. *Bothke v. Fluor Engineers and Constructors, Inc.,* 834 F.2d 804 (9th Cir.1987), is offered as the principle authority in this regard.[14]

This Court does not find that *Bothke v. Fluor* is authority for the proposition that the Fifth Amendment creates a substantive due process right to be free of abusive tax collection activities. *Bothke* does not create this purported constitutional right. The *Bothke* court merely assumed that there is a clearly established right of freedom from abusive tax collection activities for the purposes of dealing with a qualified immunity issue. The *Bothke* court specifically states in the decision that it is not passing on that right. In its decision, at page 809 (in the first line of the discussion) the Court says, specifically, "We expressly decline to consider whether *Bothke* has stated a *Bivens* cause of action." In the discussion at page 811, the Court clearly states that it assumed for the sake of argument that there was a clearly established right and that there was evidence to support the claim.[15] In so doing, the court talks about a number of cases, including the *Rutherford*[16] case which "suggest" the existence of the constitutional right. If read carefully, however, *Rutherford* shows nothing more than a remand to the trial court level for determination of facts without a *sua sponte* finding at that point that the Plaintiffs had a *Bivens* claim for abusive tax practices.[17]

---

**14.** Other authority cited included *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) a Fourth Amendment based claim for warrantless seizure; *Capozzoli v. Tracey,* 663 F.2d 654 (5th Cir.1981), a Federal Tort Claims Act case dismissed pursuant to the immunity conferred by 28 U.S.C. § 2680(c); and *Cameron v. I.R.S.,* 773 F.2d 126 (7th Cir.1985). None of these cases support Plaintiff's position. *Cameron,* in fact, held that federal courts are not authorized to award damages to a taxpayer who complains that internal revenue agents badgered or harassed him in trying to collect taxes.

**15.** The court in *Bothke* specifically indicated the reason why it did not pass on the availability of *Bivens* actions in the context of the alleged abuse by the IRS agent. It was because of the state of the record, the state of the evidence, the state of the allegations. *Id.* at 810, fn. 11.

**16.** *Rutherford v. United States,* 702 F.2d 580 (5th Cir.1983).

**17.** The *Rutherford* court itself identified a number of "unresolved questions." For instance, the court stated: "Foremost is whether the substantive aspects of the due process clause actually does create in taxpayers a liberty interest in freedom from abusive behavior of the kind, decree and effect as that attributed to Agent Kuntz." *Id.* at 584.

More specifically, and to the point, the Ninth Circuit in 1990 in reviewing this area in the case of *Wages v. IRS,* 915 F.2d 1230 (9th Cir.1990), stated "[w]e have never recognized a constitutional violation arising from the collection of taxes." *Id.* at 1235. It is my finding that the state of the law is that there is no constitutional right under the Fifth Amendment for freedom from abusive tax collection procedures.

The case law, by exclusion, would also lead to the same finding based on the evidence here. Plaintiff has asserted that Defendant failed to follow the law and IRS regulations; ignored her advices that she did not owe the tax; broke his promises to gain her signature on certain documents; and, was rude, aggressive and demanding. The law provides, however: (1) due process is not violated simply because the Government agent failed to comply with the statute [18]; (2) due process is not violated by Government's agent's failure to follow the procedures required by the Internal Revenue Code, the Treasury Regulations, or the Internal Revenue Manual [19]; (3) due process is not violated because an IRS officer fails to cease collection activity and investigate a taxpayer's story that she does not owe the tax being collected [20]; (4) IRS levies do not violate due process and have said so even if they were wrongfully done [21]; (5) due process is not violated by simple negligence or mere lack of accuracy of Government agent [22]; and finally, (6) the due process clause is not violated by rude, obstinate or discourteous behavior by an IRS agent collecting taxes.[23] I do not mean to accept that anything Mr. Silverman did was appropriate, polite, or perhaps the best "bedside manner." But whether or not his behavior is actionable is what this Court is charged with finding.

Not finding a constitutional right to freedom from abusive tax collection practices under the substantive due process clause of the Fifth Amendment, obviously, as a matter of law, the Defendant is entitled to judgment here and that is the Court's finding.

## *DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW*

[redacted] This case had been the subject of previous motions for summary judgment on the qualified immunity issue, one involving an appeal to the Ninth Circuit, with the trial court ultimately concluding that genuine issues of material fact existed as to whether Defendant's actions were reasonable.[24] This

18. *Rosenberg v. Commissioner,* 450 F.2d 529, 533 (10th Cir.1971).

19. *Id.; see also United States v. Horne,* 714 F.2d 206, 207 (1st Cir.1983).

20. *Phillips v. Commissioner,* 283 U.S. 589, 597, 51 S.Ct. 608, 611–12, 75 L.Ed. 1289 (1931); *Todd v. United States,* 849 F.2d 365 (9th Cir. 1988).

21. *Ferrel v. Brown,* 847 F.Supp. 1524 (W.D.Wash.1993); *Morales v. Haynes,* 890 F.2d 708, 709 (5th Cir.1989).

22. *Daniels v. Williams,* 474 U.S. 327, 330–33, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986).

23. *McMillen v. Dept. of Treasury,* 960 F.2d 187, 188 (1st Cir.1991).

24. The procedural history in this case is worthy of mentioning. On February 27, 1989, Defendant's Motion to Dismiss For Insufficient Service of Process was denied. The Complaint was construed to state a *Bivens* cause of action. On July 17, 1989, Defendant brought a Motion to Dismiss For Failure to State a Claim, or in the Alternative, For Summary Judgment based on qualified immunity. Both of these motions were denied. On October 6, 1989, Defendant filed an interlocutory appeal. However, Defendant eventually stipulated to dismissal of the appeal "with prejudice" on February 9, 1990.

On May 29, 1991, Defendant filed another Motion for Summary Judgment asserting that he was entitled to qualified immunity. On August 1, 1991, the Court denied Defendant's Motion for Summary Judgment. In denying the motion, it was noted that there were questions of material fact surrounding the issue of whether Defendant's conduct was "objectively reasonable" so as to entitle him to qualified immunity. Defendant again filed an interlocutory appeal. On July 16, 1993, the Ninth Circuit issued a decision dismissing Defendant's appeal for lack of jurisdiction. *Nelson v. Silverman,* 999 F.2d 417 (9th Cir.1993). The court of appeals found that while qualified immunity is an appealable final decision that confers jurisdiction to hear a pretrial appeal, one appeal should be sufficient to resolve the issue of qualified immunity. *Id.* at 418. Therefore, Defendant Silverman's first qualified immunity appeal afforded him pretrial review of the question. *Id.* The court of appeals stated: "Silverman had his pre-trial bite at the appellate

Court did rule, in limine, that the issue of qualified immunity was reserved to the Court for determination both as to the issue of whether or not the rights alleged to have been violated were clearly established at the time in question, as well as the issue of whether a reasonable officer could have believed his conduct was lawful in light of clearly established law and the information he possessed at the time.[25] This ruling was based upon and in conformity with *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993).

This Court having found that Plaintiff has proven no set of facts by which it could conclude that Defendant violated any rights clearly established under the Fourth Amendment or Fifth Amendment right to due process, Defendant is entitled to qualified immunity on those claims. This Court having further found that there is no clearly established substantive due process right under the Fifth Amendment to be free from abusive tax collection activities as alleged, the Defendant is also entitled to qualified immunity on that claim.[26]

### Conclusion

The Court has found that the evidence presented by Plaintiff at trial, when viewed in the light most favorable to Plaintiff and given the benefit of all reasonable inferences, is insufficient to create an issue of fact for the jury. Plaintiff has alleged no legally sufficient evidentiary bases upon which a reasonable jury could find for the Plaintiff on any of her claims in this case. Therefore, the Court finds that Defendant is entitled to judgment as a matter of law under Fed. R.Civ.P. 50(a) as to all of Plaintiff's claims, and hereby GRANTS Defendant's motion for such relief. In addition, the Court finds Defendant is entitled to qualified immunity on Plaintiff's claims.

IT IS SO ORDERED.

---

apple and . . . he is not entitled to another." *Id.* at 419. On February 3, 1995, Defendant filed his third Motion for Summary Judgment. The motion was denied and following the filing of Consent to Proceed to Trial Before a Magistrate Judge, the trial commenced.

25. The Trial Court ruled during motions in limine that the precise legal standard for determining entitlement to qualified immunity is "whether a reasonable revenue agent could have believed his actions to be lawful, in light of clearly established law and the information Defendant possessed." See *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991). The Court's determination as to "reasonableness" is the focus of this portion of Defendant's motion and the Plaintiff's evidence in her case in chief.

26. At the hearing on this motion, the Court discussed the evidence as to qualified immunity and discussed what its ruling would have been assuming arguendo that there existed a substantive due process right as alleged by Plaintiff. The gratuitous comments of the Court at that hearing should not be construed as authority or analysis inconsistent with this Court's actual ruling or for the proposition that any such purported right exists. On entertaining this exercise, this Court would have found that Defendant acted reasonably by reference to clearly established law and would have been entitled to qualified immunity on that basis.