William C. and Lois King EMBRY,
Plaintiffs,

v.

William M. GRAY, District Director of
Internal Revenue, Louisville, Kentucky, Defendant.

Civ. A. No. 2933.

United States District Court
W. D. Kentucky, at Louisville.

Aug. 31, 1956.

E. J. Wells, Louisville, Ky., for plaintiffs.

J. Leonard Walker, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This action was filed May 18, 1955. It was tried to the Court without a jury March 5, 1956 after which time Counsel filed briefs and the matter was submitted to the Court.

Plaintiffs seek to recover an allegedly overpaid income tax for the years 1949 in the sum of $331.04, 1950 in the sum of $1,920.86, including interest.

The matters involved are deductions taken by plaintiffs in their initial tax returns which were subsequently disal-

lowed by the Commissioner, with resulting assessments.

The Court makes the following—

### Findings of Fact

1. Plaintiffs, for the calendar year 1949, reported net taxable income of $6,143.97, upon which they paid a tax of $521.88. For the year 1950, plaintiffs paid a tax of $2,571.56, representing the tax on a net income of $15,470.19.

2. Upon subsequent examination of the returns and on April 15, 1954, the Commissioner having audited the return for 1949, increased the net taxable income from $6,143.97 to $7,783.47, and increased the net taxable income for the calendar year 1950 from $15,470.19 to $21,237.09. Upon the increase, the Commissioner assessed for 1949 an additional tax of $293.80 and $71.98 interest and for the year 1950 an additional tax of $1,655.80 and interest in the sum of $306.32, which additional assessments and interest were paid by plaintiffs on or about April 27, 1954.

3. On June 22, 1954, plaintiffs filed claims for refund in the sum of $365.78 for 1949 and $1,962.12 for 1950, which claims were disallowed by the Commissioner April 25, 1955 and this suit followed.

4. The additions to the income resulting from the disallowed deductions involved for 1949 were a casualty loss of $1,100 on account of the freezing of a large hackberry tree in the latter months of 1949 and the second item was $300 deducted as entertainment expense incurred by William C. Embry in entertaining customers of the General Box Company, of which Company he was Vice President and for which amount he was not reimbursed by the General Box Company.

The remaining disallowance of the deduction of $85 pertained to $25 which the taxpayer deducted as his miscellaneous contributions through the year in small amounts of cash to the American Red Cross, the Community Chest and charitable organizations.

5. For the year 1950 the deductions taken by taxpayer and subsequently disallowed by the Commissioner were (1) profit realized by plaintiffs on the sale of real estate which the plaintiffs treated as the sale of a capital asset and the resulting profit as a capital gain. (2) Contributions of $155 to charitable organizations (American Red Cross, Community Chest, Girl Scouts, etc.). (3) Expense of entertaining customers of General Box Company in the sum of $200 for which taxpayer had not been reimbursed, and (4) Casualty loss of $1,510 representing the loss by freezing in the early months of 1950 of a large elm tree, a magnolia tree and a cherry tree. $1,375 of this last deduction was claimed as the loss of the trees and $145 in cleaning up the storm damage and having removed the branches and scrap left from the damaged trees.

6. While no accurate account was kept by the taxpayer either in 1949 or 1950 of the amount of contributions made to the various charitable organizations nor of the actual expense incurred by him in committee and other work which he did for such charitable organizations, the Court is impressed that the amount claimed, $85, is reasonable and there is no evidence to dispute taxpayers' statement that he contributed at least this amount. Accordingly, the Court finds as a fact that the taxpayer William C. Embry did expend $85 as claimed by him and is entitled to the deduction taken both in the year 1949 and 1950.

7. Taxpayer William C. Embry's testimony is equally convincing and undisputed that in the year 1949, while he was Vice President of the General Box Company, he expended $300 and in the year 1950 $200 in entertaining customers and prospective customers of his Company, for which he is entitled to a deduction and the amount deducted is reasonable, although an estimate.

8. In 1948, taxpayer William C. Embry obtained from his father, in an exchange of property, a large house situated upon 6.12 acres of land heavily cov-

ered with large trees. In the latter part of 1949, a large hackberry tree 42 inches in diameter was so badly damaged by ice and sleet that it had to be cut down and destroyed. The tree was not replaced. In the early months of 1950, a similar casualty happened with respect to a large elm tree, 32 inches in diameter, which also had to be destroyed and two small trees, one a magnolia, the other a cherry were destroyed, none of which were replaced and Mr. Embry deducted $1,100 as the value of the large hackberry on his 1949 return and $1,510 as the value of the elm, magnolia and cherry and $145 to carry away the branches and scrap in having the damaged trees cut down.

Neither the plaintiffs nor any witness at any time undertook to estimate the damage to the trees in any way except by obtaining from the "Davey Tree Experts" an amount which they said would be required to replace the trees destroyed. Mr. Embry said "It is almost impossible to say the day before the windstorm the place was worth so many dollars and the day after it was worth so much less. So, I used the advice of the Davey Tree people as to what my loss had been."

Plaintiffs introduced in evidence a pamphlet issued by the United States Department of Agriculture, "Agricul-'tural Handbook No. 52" wherein under Chapter entitled "Determining The Recognized Loss" where damage has occurred by internal physical violence or acts of God, such as lightning, windstorm, ice, hail, sleet, freezing, etc. It is stated on page 22 that the method of determining the recognized loss in the case of damage to individual or ornamental trees, standing on residential or other nonbusiness properties is the difference in the value of the property as a whole before and after the windstorm, lightning or other casualty, and that the deduction claimed may not be greater than the adjusted basis of the property as a whole, to be reduced however by any insurance or salvage. There was no insurance or salvage involved in plaintiffs' loss. There is no evidence in the case

as to what if any damage resulted to the plaintiffs' property by reason of the destruction of the trees.

When Mr. Paul Kendall, a realtor of long experience and recognized ability, was asked to give his opinion as to the amount of reduction in value in the property, if any, by reason of the trees being destroyed, he said—"I wouldn't answer that, without going back to the property and thinking of the trees as they were, and then as it is now." Mr. Kendall testified that this property in 1948 at the time it was acquired by plaintiffs had a reasonable value of $20,000 and that in 1950 it had a value of $50,000. Hence, there is no testimony upon which to evaluate the loss occasioned by the plaintiffs, except as to the $145 they paid in having the damaged trees cut down and the debris removed. To this amount plaintiffs are entitled.

9. William C. Embry acquired the 6.12 acres on which his residence is located from his father in May of 1948. He conveyed to his father in exchange for the property his home valued at $20,000 and a cash payment of $12,500.

In the year of 1950, he decided to subdivide some 4.12 acres of the tract and to carry forward this subdivision and its development, Mr. Paul Kendall, a realtor and the firm of Miller & Wherry, Engineers, were employed and a plat was obtained and approved by the Planning and Zoning Commission. The subdivision was ready for sale in July of 1950. A lot referred to in the evidence as lot #3 was sold in 1950 for $6,000 and at the time of the sale of the lot the sum of $46.25 had been paid out in platting and having recorded the plat of the subdivision. A road, water line and gas line were extended to the lots other than the one sold in 1950. The expenses incident to the sale of the lot in 1950 were commission to the real estate agent of $600, $6.60 in revenue stamps and $1.75 for a recording fee.

At that time, there was no evidence that Mr. Embry was engaged in the real estate business or had acquired the 6.12 acres from his father with any

idea of using same other than as his residence and home. The development of a subdivision adjacent and near to their property prompted plaintiffs to subdivide and sell the 4.12 acres. Subsequently, sometime in the year 1952 plaintiff William C. Embry entered into the real estate business, but the Court finds from the evidence that his sale of the lots comprising the 4.12 acres was the sale of capital assets.

The Court further finds that the total cost, including expenses of the lot sold in 1950 for $6,000 was $2,995.91, on which taxpayer realized a profit of $3,004.09 and that he properly paid a tax on one-half of this profit as a capital gain and that he was taxable on account of the sale of a capital asset.

## Conclusions of Law

I. The Court has jurisdiction of the parties and the subject matter of this controversy. Title 28 U.S.C.A. § 1340.

▇ II. In an action to recover taxes paid, the burden is on the plaintiff, in order to establish a basis for judgment in his favor, specifically to show not merely that the assessment was erroneous, but also to show the specific amount to which the taxpayer is entitled as a deduction. Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623.

In the case of Durkee v. Commissioner, 6 Cir., 162 F.2d 184, 187, 173 A.L.R. 553, Judge Miller discusses the distinction between a proceeding in the Tax Court following an assessment by the Commissioner and an action in the District Court to recover a claimed refund. He there said—

"In proceedings before the Tax Court, *as distinguished from suits for refund in the District Court*, it is sufficient to show that the Commissioner's determination is invalid." (Emphasis added.)

▇ Hence, in this case plaintiffs on the claimed casualty loss to the trees do not show the amount of the deduction, if any, representing the difference in the value of the property immediately before and immediately after they sustained the casualty loss. Therefore, plaintiffs have failed to carry the burden of overcoming the presumptive correctness that the law imputes to the Commissioner's findings.

The same reasoning is followed by the Court of Appeals for the Sixth Circuit in the case of Gasper v. Commissioner, 225 F.2d 284.

In the case of United States v. Pfister, 8 Cir., 205 F.2d 538, 542, the Court said—

"The burden is on the taxpayer to establish the exact amount to which he is entitled. To sustain the burden upon him, taxpayer must prove the legality and amount of any deduction claimed."

In the case of Roybark v. United States, D.C., 104 F.Supp. 759, 762, the Court said—

"Not only must the plaintiff show that the Commissioner was wrong, but he must go further and *establish the essential facts from which a correct determination of his tax liability can be made*." (Emphasis added.)

## Conclusion

▇ The Court concludes that plaintiffs are entitled to recover $85 disallowed by the Commissioner as contributions to, and expenses incurred on behalf of, charitable institutions and are entitled to $300 disallowed by the Commissioner as expenses of entertaining customers of the General Box Company in 1949.

Plaintiffs are not entitled to recover $1,100 or any other sum on account of the loss of the hackberry tree in 1949.

Plaintiffs are entitled to treat the profit on the sale in 1950, $3,004.09, as a capital gain or the gain realized on the sale of a capital asset. They are entitled to recover the claimed deduction of $155, contributions to charitable organizations and the sum of $200 expended in entertaining customers of the General Box Company, but are not entitled to $1,365, the amount claimed for loss of trees by

casualty in 1950, being only entitled to $145, on account of the 1950 casualty, which was expended in getting removed and cleaning up debris from the damaged trees.

Counsel for plaintiffs will present judgment in accordance herewith, on notice to Counsel for defendant.