Thomas E. TILLEY and Iris M. Tilley, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 1:02CV629.

United States District Court, M.D. North Carolina.

July 11, 2003.

Iris M. Tilley, Chapel Hill, NC, pro se.

Thomas E. Tilley, Chapel Hill, NC, pro se.

John W. Stone, Jr., Office of U.S. Attorney, Greensboro, NC, Jonathan D. Carroll, U.S. Department of Justice, Washington, DC, for U.S.

## ORDER

DIXON, United States Magistrate Judge.

This is an action for refund of taxes, brought by Plaintiffs Thomas E. Tilley and Iris M. Tilley ("Tilleys"). Defendant United States of America ("United States") has filed a motion [Doc. # 13] to dismiss and for summary judgment. The United States has also filed a motion [Doc. # 19] for protective order pursuant to Rule 26(c) protecting it from having to respond to the Tilleys' discovery requests. The parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). In this posture, the matter is ripe for disposition.

## I. Background

In this suit, the Tilleys seek a refund of taxes paid for the tax periods 1991, 1992, 1994 and 1995. The Tilleys timely filed joint returns for the 1991 and 1992 tax periods. By notice of deficiency dated November 14, 1995, the United States determined deficiencies and accuracy-related penalties for 1991 and 1992 totaling $84,858. *See Tilley v. Commissioner*, 73 T.C.M. (CCH) 2763, T.C. Memo.1997–222, 1997 WL 240958 (May 12, 1997). The Tilleys filed a petition with the Tax Court challenging their liability to this sum. The Tax Court determined that the Tilleys were liable for the 1991 and 1992 deficiencies. *See id.*

The Tilleys did not file returns for the 1994 and 1995 tax periods. By notice of deficiency dated November 14, 1996, the United States determined deficiencies and penalties in the tax of Thomas Tilley for the 1994 and 1995 tax periods. The United States calculated that Thomas Tilley had a taxable income of $147,743 in 1994 and $133,458 in 1995, resulting in a tax deficiency of $87,352, and penalties totaling $24,068. (Gov.Ex. 2). Thomas Tilley did not petition the Tax Court concerning the 1994 and 1995 deficiencies.

In 1999, The United States collected the entire amount of the tax and penalties due for the 1991, 1992, 1994 and 1995 tax periods. (*See* Compl. ¶ VI(b); Gov. Ex. 1). In September 2000, the Tilleys filed an administrative claim for refund, and in November 2001, they filed a supplement to their administrative claim for refund. Receiving no response to their administrative claim for refund, the Tilleys filed suit in this court on August 1, 2002.

In their complaint, the Tilleys argue that they are entitled to a tax refund because:

(1) the statutory notice of deficiency for 1994 and 1995 was invalid, since the IRS failed to file a valid involuntary return for Thomas Tilley;

(2) the IRS failed to issue and serve valid notices of assessments and demands for payments as required by 26 U.S.C. Section 6303(a);

(3) the taxes were unconstitutional, since a tax measured by an individual's so-called income is in the nature of a capitation tax and can only be imposed by apportionment;

(4) the taxes were collected in violation of the Fourth Amendment of the United States Constitution, since an executive warrant was not issued;

(5) the taxes were collected in violation of the Ninth Amendment of the United States Constitution;

(6) the IRS failed to allow business expenses and personal deductions;

(7) a valid assessment does not exist as a matter of law; and

(8) the taxes were collected in violation of 26 U.S.C. Sections 6320 and 6330, because the IRS failed to hold a collection due process hearing as requested.

(Compl.¶ VI(d)).

The parties attended a discovery conference on December 9, 2002, and agreed on a discovery plan. In their joint Rule 26(f) report, the parties indicated that discovery would be needed on only one issue, "whether plaintiffs are entitled to business and personal deductions and if so, the amounts." (Doc. # 8, ¶ 2). On February 19, 2003, the Tilleys mailed to the United States requests for admissions, interrogatories, and requests for production. In this discovery the Tilleys did not seek information on business or personal deductions, but rather sought admissions and information on the administrative procedures of the Internal Revenue Service (IRS) in handling tax filings, deficiencies,

assessments and collections in this case and in general. (*See, e.g.,* Request for Admission # s 13–82; Interrogatory # s 4–20; Request for Production # s 2–14). Many of the requests for admissions also ask the IRS to give legal statements regarding the Internal Revenue Code. (*See, e.g.,* Request for Admission # 89 ("Admit that the term 'individual' is not defined in the Internal Revenue Code"), # 93 ("Admit that Section 61(a) of the Internal Revenue Code defines 'gross income' as all income from whatever source derived, but does not define income"), and # 94 ("Admit that in the absence of gain, there is no income in the constitutional sense, and thus no 'gross income' under Section 61(a)")).

The United States did not respond to this discovery request, but rather filed a motion to dismiss and for summary judgment on March 21, 2003. The United States moved to dismiss the Tilleys' claims insofar as they relate to the tax years 1991 and 1992, on grounds that the tax liability for this period was previously litigated in Tax Court. The United States also moved for summary judgment on the Tilleys' claim that the IRS failed to conduct a collection due process hearing, on grounds that the Tax Court had already made a determination on this issue. In addition, the United States moved for dismissal of the Tilleys' claims based on constitutional or procedural defects in the collection process, on grounds that these claims are frivolous. Finally, the United States moved for summary judgment on the Tilleys' claim that they are entitled to business and personal deductions for the years 1994 and 1995, on grounds that they failed to show that they are entitled to deductions for these years. (*See* United States'

Motion to Dismiss and for Summary Judgment, Doc. # 13, pp. 1–2; United States' Brief in Support of its Motion to Dismiss and for Summary Judgment, Doc. # 14 [hereinafter "Br. in Supp."]).

The Tilleys filed a response, accompanied by a Declaration of Thomas Tilley that includes copies of "receipts for personal deductions and business expenses" for the 1994 and 1995 tax periods. (Doc. # 's 16–17 [hereinafter "Pls' Resp." and "Declaration"]). The United States replied, maintaining that the Tilleys have not met their burden of showing that they are entitled to a refund. (Doc. # 18 [hereinafter "Reply"]). The United States also filed, on May 12, 2003, a motion for protective order to protect it from having to respond to the Tilleys' discovery requests.

## II. Discussion

### A. Protective Order

■ A protective order under Rule 26(c) to stay discovery pending determination of a dispositive motion is an appropriate exercise of the court's discretion. *Chavous v. District of Columbia Financial Resp. and Mgmt. Asst. Auth.,* 201 F.R.D. 1, 2 (D.D.C.2001); *Simpson v. Specialty Retail Concepts, Inc.,* 121 F.R.D. 261, 263 (M.D.N.C.1988); *see* Fed.R.Civ.P. 26(c). The court should not, however, stay discovery which is necessary to gather facts in defense of the motion. 201 F.R.D. at 3; 121 F.R.D. at 263.

■ In this case, the United States has filed a motion to dismiss and for summary judgment, which, if granted, would dispose of the case. Thus a stay of discovery is appropriate if the discovery requested by the Tilleys is not relevant to the opposition of the motion.[1] To determine whether the

---

1. In opposition to the protective order, the Tilleys do not argue that the additional discovery is necessary to oppose the summary judgment motion. Rather, the Tilleys argue that the motion for protective order should be denied because it was made after the date set for producing the discovery. (Pls' Resp. to Mot. for Prot. Ord., p. 3). It is true that,

discovery sought is irrelevant, the court must examine the merits of the United States' dispositive motion. If the Tilleys' claims fail as a matter of law, or if the discovery sought has no bearing on an issue of material fact, a protective order is proper. For the reasons stated below, the Tilleys' claims fail as a matter of law, and, particularly with regard to the issue of itemized deductions, the discovery sought relating to the IRS's administrative procedures has no bearing on an issue of material fact. Therefore, the United States' motion for protective order will be granted.

### B. Motion to Dismiss and Summary Judgment

#### i. Standard

A claim is subject to dismissal under Rule 12(b)(6) if, under the facts alleged and under any facts that could be proved consistent with the facts alleged, the claim is legally insufficient. *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000). In other words, a motion to dismiss allows a court to eliminate claims that are "fatally flawed in their legal premises." *Parham v. Pepsico, Inc.*, 927 F.Supp. 177, 178 (E.D.N.C. 1995). If matters outside the complaint pertaining to the claim are presented to the court, the motion will be treated as one for summary judgment. FED.R.CIV.P. 12(b)(6).

A claim is subject to summary judgment under Rule 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED.R.CIV.P. 56(e)).

In making a determination on a summary judgment motion, the court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield of Virginia*, 67 F.3d 53, 56 (4th Cir.1995). Nevertheless, judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). Thus, the moving party can bear its burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish its claim. *Celotex*, 477

generally, a motion for protective order must be made prior to the date set for the discovery. *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 414 (M.D.N.C.1991). In this case, though, the United States filed a dispositive motion before the time for producing the discovery had expired, on March 21, 2003. Be-

cause the dispositive motion has the potential to dispose of the case without the need for further discovery, it falls within the court's discretion to stay discovery pending resolution of the dispositive motion. *Chavous*, 201 F.R.D. at 2; *Simpson*, 121 F.R.D. at 263.

U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). "[A] complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

### ii. Frivolous Constitutional Claims

Several of the Tilleys' claims are frivolous and fail as a matter of law. In one claim, the Tilleys argue that "the taxes were unconstitutional, since a tax measured by an individual's so-called income is in the nature of a capitation tax and can only be imposed by apportionment." (Compl.¶ VI(d)(3)). The Sixteenth Amendment puts such an argument to rest, stating:

> The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, *without apportionment* among the several States, and without regard to any census or enumeration.

U.S. CONST. amend. XVI (emphasis added). Therefore this claim should be dismissed.

■ Next, the Tilleys argue that "the taxes were collected in violation of the Fourth Amendment of the United States Constitution, since an executive warrant was not issued," (Compl.¶ VI(d)(4)). In support of this claim, the Tilleys cite *Soldal v. Cook County,* 506 U.S. 56 n. 11, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) and *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 351–52, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). (*See* Pls' Resp., pp. 6–7). While it is true, as *Soldal* notes, that the Fourth Amendment "fully applies in the civil context," 506 U.S. at 67, n. 11, 113 S.Ct. 538, it is also true, as *G.M. Leasing* states, that no warrant is required by the Fourth Amendment in order to collect taxes by levy under 26 U.S.C. § 6331, provided the levy does not otherwise involve an unconstitutional intrusion of privacy. *G.M.*

*Leasing Corp.,* 429 U.S. at 354, 97 S.Ct. 619; *Nelson v. Silverman,* 888 F.Supp. 1041, 1046 (S.D.Cal., 1995); *see also Bull v. United States,* 295 U.S. 247, 260, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) (stating that a tax assessment "is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt"); *Murray's Lessee v. Hoboken Land & Improvement Co.,* 18 How. (59 U.S.) 272, 15 L.Ed. 372 (1855) (warrant not required for seizure of debtor's land in satisfaction of a claim of the United States). Because the IRS collected the Tilleys' taxes in this case by levy, and the Tilleys have made no allegation that, in order to levy upon their property, any revenue officer entered into their home without consent or invaded any area of expected privacy as defined as a matter of constitutional law, no warrant was required. *See Nelson,* 888 F.Supp. at 1046. Accordingly, the Tilleys' argument is without merit.

Next, the Tilleys argue that "the taxes were collected in violation of the Ninth Amendment of the United States Constitution." (Compl.¶ VI(d)(5)). The Tilleys have not explained in their brief in opposition to the motion to dismiss what aspect of the Ninth Amendment was violated by the collection of taxes in this case. *See* U.S. CONST. amend. IX (providing that "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people"). Thus, it is impossible for the court to evaluate the merits of this claim. In any event, the issue of the constitutionality of the collection process set out in the Internal Revenue Code has long been settled. *See Phillips v. Commissioner of Internal Revenue,* 283 U.S. 589, 597, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); *Baddour, Inc. v. United States,* 802 F.2d 801, 807 (5th Cir.1986); *Stites v. United States Government,* 746 F.2d 1085, 1086 (5th Cir.1984);

*Christensen v. United States*, 733 F.Supp. 844, 850–51 (D.N.J.1990). Therefore, this claim must be dismissed.

### iii. Claims Relating to 1991 and 1992 Tax Liability

Although no single claim by the Tilleys explicitly applies only to the 1991 and 1992 tax periods, several claims can be read, in conjunction with the allegations of the complaint, to challenge tax liability for these years. (*See, e.g.*, Compl., ¶ VI(d)(2), (6), (7) & (8)). The United States correctly points out, and the Tilleys do not dispute, that this court lacks jurisdiction over the Tilleys' claims insofar as they concern their 1991 and 1992 tax liabilities.

■ The Tilleys previously filed a petition with the Tax Court concerning their 1991 and 1992 income tax liabilities. The Tax Court determined that the income tax liabilities were correct. *See Tilley v. Commissioner*, 73 T.C.M. (CCH) 2763, T.C. Memo. 1997–222 (May 12, 1997). Under § 6512(a) of the Internal Revenue Code, because the Tilleys previously filed a petition with the Tax Court "no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court." 26 U.S.C. § 6512(a); *Solitron Devices v. United States*, 862 F.2d 846, 848 (11th Cir.1989). Therefore, the Tilleys' claims concerning their 1991 and 1992 tax liabilities must be dismissed.

### iv. Notice of Deficiency

■ The Tilleys next argue that "the statutory notice of deficiency for 1994 and 1995 was invalid, since the IRS failed to file a valid involuntary return for Thomas Tilley." (Compl.¶ VI(d)(1)). This claim fails as a matter of law because, even if the IRS did not file a valid involuntary return for Thomas Tilley, this does not render the

statutory notice of deficiency for 1994 and 1995 invalid. Contrary to the Tilleys' argument in their brief, § 6020(b)(1) authorizes, but does not require, the IRS to file a substitute return if a taxpayer fails to file a return. *United States v. Verkuilen*, 690 F.2d 648, 657 (7th Cir.1982). The IRS may issue a notice of deficiency without having to file a formal substitute return on behalf of the taxpayer. *Hartman v. Commissioner of Internal Revenue*, 65 T.C. 542, 546, 1975 WL 3038 (1975); *see Schiff v. United States*, Civil No. N–86–354(WWE), 89-2 U.S. Tax Cas. (CCH) ¶ 9551, 1989 WL 119410, *2, 1989 U.S. Dist. LEXIS 11807, *7 (D.Conn. Sept.6, 1989) ("A taxpayer's failure to file a return does not bar the determination of a deficiency. When 'a taxpayer files no return, the deficiency can be determined *as if* a return was made showing the amount of tax to be zero.'") (quoting *Hartman*, 65 T.C. at 546) (emphasis added).

The Notice of Deficiency submitted by the United States in this case, (*see* Gov. Ex. 2), sets forth in full the explanation and calculation of the deficiency, and gives the Tilleys the right to petition the Tax Court and contest the Commissioner's determination prior to the payment of any taxes. As such, it comports with the statutory requirements for a notice of deficiency. *See* 26 U.S.C. § 6212. Thus, the Tilleys' claim that the Notice of Deficiency for 1994 and 1995 is invalid is without merit and will be dismissed.

### v. Notice of Assessment and Demand for Payment

The Tilleys next claim that "the IRS failed to issue and serve valid notices of assessments and demands for payments as required by 26 U.S.C. Section 6303(a)." (Compl.¶ VI(d)(2)).[2] Section 6303 provides

---

2. The Tilleys also state in their seventh claim (Compl., ¶ VI(d)(7)) that "a valid assessment does not exist as a matter of law." The

Tilleys do not, however, provide any explanation or argument in support of this claim in their brief in opposition to summary judg-

that "after the making of an assessment of a tax pursuant to section 6203, [the Secretary shall] give notice to each person liable for the unpaid tax, *stating the amount and demanding payment thereof.*" 26 U.S.C. § 6203(a) (emphasis added). In support of their claim, the Tilleys note that the United States only sent them a letter "stating an amount [and] requesting the recipient to 'please' pay the amount stated." (Pls' Resp., p. 8).[3] They argue that § 6303(a) requires more demanding language than "please pay the amount stated" in order to constitute a valid notice and demand for payment.

The Tilleys cite to *United States v. Jersey Shore State Bank*, 781 F.2d 974, 978 (3rd Cir.1986) and *Toussiant v. Department of the Treasury*, Civil Action No. 91–3150, 1991 U.S. Dist. Lexis 11275 *8 (D.N.J. Aug. 2, 1991) in support of their contention that a mere request for payment is insufficient to satisfy the requirements of § 6303. In *Jersey Shore State Bank*, the Third Circuit stated:

A section 6303(a) notice consists of two discrete elements: (i) notice of the amount that has been assessed and (ii) a demand that the individual receiving the notice presently satisfy that assessment. Thus, the plain language of the statute envisions a notice not unlike a typical creditor's dunning letter, providing the individual receiving it with one last opportunity to pay the taxes before the government invokes the full panoply of its administrative collection powers.

781 F.2d at 978. Citing *Jersey Shore*, the court in *Toussiant* determined that certain language in a purported notice letter would not satisfy the requirements of § 6303(a). In particular, the court noted:

On [May 13, 1991] a purported notice and demand for payment was sent. That document clearly does not contain a demand for payment. At most, it notifies Mr. Toussaint [sic] of the amount due and *requests that he "please" make payment in a certain manner.* While the Court certainly does not criticize the IRS for endeavoring to be polite to a taxpayer, nevertheless, this "notice" does not satisfy the requirements of § 6303(a).

1991 U.S. Dist. Lexis 11275 at *8 (emphasis added).

■ The Tilleys argue that because the demand letter they received included similar language, it, too, does not satisfy the requirements of § 6303(a). This court disagrees, and finds, contrary to the interpretation of the statute set forth in *Toussiant*, that a request to the taxpayer to "please" make a payment of a certain amount is adequate to satisfy the requirements of § 6303. Courts have consistently found that the notice and demand for payment may be made in varying forms. For example, in *Smith v. Malone*, the court found that "the form on which a section 6303(a) notice and demand is provided is irrelevant as long as it adequately informed the taxpayer of his or her tax liability and *requested* payment." *Smith v. Malone*, No. C88–340Z, 88–2 U.S. Tax Cas. (CCH) ¶ 9540, 1988 U.S. Dist. LEXIS 16378 *6, 1988 WL 126524 *2–3 (W.D.Wash. July 15, 1988) (emphasis added). In *Hughes v. United States*, the Ninth Circuit adopted an equally expansive view of § 6303, stat-

---

ment. (*See, e.g.*, Pls' Resp., p. 2 (not listing this claim as one of the "factual issues in dispute" in this case)). Therefore, the court finds this claim abandoned, or, at most, subsumed into the related claims discussed in the text. (*See* Compl., ¶ VI(d)(2) & (6)).

**3.** Neither the Tilleys nor the United States provides the court with a hard-copy of this letter, therefore, the court will assume arguendo that the letter contains the precise wording as represented by the Tilleys in their brief.

ing that notices sent by the IRS "satisfied the requirements of § 6303(a) by informing the [taxpayers] of the amount owed and by *requesting* payment." *Hughes v. United States*, 953 F.2d 531, 536 (9th Cir. 1992) (emphasis added). Thus, if in this case Mr. Tilley received a letter requesting that he please pay the amount stated, this satisfies the requirements of § 6303(a). Whether the IRS adopted a polite tone and used the word "please" before the request or whether the IRS adopted a more threatening tone is irrelevant, so long as a request for payment was made.

Furthermore, even if the court accepts the interpretation of § 6303 espoused by the Tilleys and *Toussiant,* the flaw in the demand letter, alone, does not invalidate the collection. Indeed, the court in *Toussiant* ultimately found that multiple other notices sent to the taxpayer were adequate to satisfy the requirements of § 6303. After finding the initial demand letter inadequate under § 6303, the court in *Toussiant* continued its analysis:

> Our inquiry is not ended, however. On or about June 3, 1991, defendant sent and plaintiff received a Notice of Intent to Levy.... *Although this document was sent pursuant to the requirements of § 6331(d) as a necessary prerequisite to the Notice of Levy served on plaintiff's employer, this document in fact satisfies all the requirements of § 6303(a).* Unlike [the previous notice], [the Notice of Intent to Levy] unequivocally demands payment of the full liabili-

ty asserted and warns the plaintiff of the consequences "if full payment is not received within 10 days . . . ."

1991 U.S. Dist. Lexis 11275 at *8 (emphasis added). This approach was also followed by the Ninth Circuit, in *Hughes.* There, the taxpayer did not receive any formal demand letter at all. The taxpayer did, however, receive numerous final notices (notices of intention to levy) as well as notices of deficiencies, notices of liens, a notice of levy, a notice of sealed bid sale, and a notice of garnishment. The Ninth Circuit found that these notices, although not demand letters, satisfied the requirements of § 6303(a). The court explained, "these numerous notices were sufficient because the form on which a notice of assessment and demand for payment is made is irrelevant as long as it provides the taxpayer with all the information required under 26 U.S.C. § 6303(a)." 953 F.2d at 536.[4]

In this case, in addition to the letter providing notice of assessment and request for payment, the IRS sent the Tilleys notices of deficiency, several notices of determination concerning collection actions, and a notice of intent to levy and right to hearing stating the United States' intention to proceed with collection by levy. *See Tilley v. Commissioner,* 83 T.C.M. (CCH) 1912, T.C. Memo. 2002–161, 2002 WL 1377737 (June 25, 2002); Gov. Exs. 1 & 2. If the more polite request for payment did not satisfy the § 6303(a) requirement, the more urgent notices and

---

**4.** Several additional cases cited by the Tilleys in their brief do not detract from application of this expansive approach. For instance, in *Commissioner v. Shapiro,* 424 U.S. 614, 622 n. 7, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976), the Supreme Court avoided the issue of whether a proper demand letter was sent, finding instead that a subsequent notice of levy satisfied the statutory demand requirements to make collection valid. *See also Martinez v. United States,* 669 F.2d 568 (9th Cir.1981) (providing

no rule on what language constitutes a "demand," but merely stating that at a minimum, before levy, the taxpayer must be *given notice and an opportunity to fail or refuse to pay the tax*) (emphasis added); *United States v. Berman,* 825 F.2d 1053, 1055–57 (6th Cir.1987) (providing no rule on what language constitutes a "demand," and finding that notices which had been claimed to have been mailed were not, in fact, mailed).

demands preceding impending collection actions certainly did. Therefore the court finds that the Tilleys received adequate notice and demand as required by § 6303(a).

### vi. Collection Due Process Hearing

Next, the Tilleys claim that "the taxes were collected in violation of 26 U.S.C. Sections 6320 and 6330, because the IRS failed to hold a collection due process hearing as requested." (Compl., ¶ VI(d)(8)). In seeking dismissal of this claim, the United States points out that the Tilleys have previously litigated this claim in Tax Court, and that the Tax Court properly found that the Tilleys had received the collection hearing due under law.

In *Tilley v. Commissioner*, the Tax Court examined the issue of whether the Tilleys had received an opportunity for a hearing as required by 26 U.S.C. § 6330. 83 T.C.M. (CCH) 1912, T.C. Memo. 2002–161, p. 3 (June 25, 2002). Section 6330(b) provides:

> (b) Right to fair hearing.
>
> (1) In general. If the person requests a hearing under subsection (a)(3)(B), such hearing shall be held by the Internal Revenue Service Office of Appeals.
>
> (2) One hearing per period. A person shall be entitled to *only one hearing* under this section with respect to the taxable period to which the unpaid tax specified in subsection (a)(3)(A) relates.

26 U.S.C. § 6330(b) (emphasis added). In this case, the Tax Court found that on February 3, 1999, the IRS sent to the Tilleys a notice of intent to levy with respect to the taxable years 1991, 1992, 1994 and 1995. Then, on February 22, 1999, the IRS received the Tilleys' request for a Collection Due Process Hearing with respect to those years. On April 15, 1999, an Appeals Officer "held a telephone con-ference with Mr. Tilley in response to the request for a collection hearing." 83 T.C.M. (CCH) 1912, T.C. Memo. 2002–161, p. 5. "Both parties discussed the issues in the request," including the issue of whether Mr. Tilley should be entitled to certain deductions and credits. *Id.*

■ Mr. Tilley does not dispute these facts, but instead asserts, as he asserted before the Tax Court, that he was not afforded a person-to-person hearing, as he requested in a second written hearing request. (*See* Declaration of Thomas Tilley, ¶ 5). The Tax Court found that, regardless of whether Mr. Tilley had requested a second hearing person-to-person, the requirements of § 6330 had been met through the telephone conference. 83 T.C.M. (CCH) 1912, T.C. Memo. 2002–161, p. 6. This court agrees.

In *Katz v. Commissioner*, 115 T.C. 329, 337–38, 2000 WL 1520318 (2000), the Tax Court specifically found that where the taxpayer and the Appeals Officer had a telephone conference, instead of a face-to-face hearing, in which the taxpayer's arguments were discussed, the taxpayer had received an Appeals hearing as required by law. 115 T.C. at 337–38. Neither the Internal Revenue Code nor the Constitution requires a person-to-person hearing before a levy determination is made, and even a hearing by correspondence is sufficient to satisfy due process. *See Lunsford v. Commissioner*, 117 T.C. 159, 170–74, 2001 WL 1521578 (2001) (Halpern J., concurring) (explaining basis for rule in administrative law).

In this case, because Mr. Tilley was given the opportunity for a telephone conference in which he discussed the substance of his case with an Appeals Officer, he received the process due under § 6330 and the Constitution. Therefore his claim must be denied as a matter of law.

### vii. Failure to Assess Business Expenses and Personal Deductions

Finally, the Tilleys argue that Mr. Tilley[5] is due a refund because the IRS failed to allow business expenses and personal deductions when making the tax assessment for Mr. Tilley for the 1994 and 1995 tax period. (Compl., ¶ VI(d)(8)). The United States moved for summary judgment on this claim on grounds that the assessments made against Mr. Tilley for 1994 and 1995 are presumptively correct and that Mr. Tilley had not shown how the assessments were incorrect nor what the correct tax liability should be. (Br. in Supp., p. 6). In his Response, Mr. Tilley argues that he is entitled to "personal deductions and business expenses." (Pls' Resp., p. 17). In support of this claim, Mr. Tilley filed a sworn Declaration, which includes as attachments "true and correct copies of receipts for personal deductions and business expenses for the tax period[s] 1994 [and 1995]." (Declaration, ¶¶ 21–22). Mr. Tilley contends that "it is uncontested that the items attached to the declaration of Tilley, which are supported by substantial evidence, are generally deductible." (Pls' Resp., p. 17 n. 3). In conclusion, Mr. Tilley asserts that "because the IRS did not allow Thomas Tilley to itemize his deductions, this Court must determine the correct amount of his tax liability for 1994 and 1995." (Id., p. 19).

In its Reply, the United States asserts that Mr. Tilley has not met his burden to overcome summary judgment. The United States argues that the documents produced by Mr. Tilley do not show the amount of deductions Mr. Tilley is entitled to or his correct tax liabilities. In addi-

tion, the United States points out that it is up to Mr. Tilley, not this court, to show "the correct amount of [Mr. Tilley's] tax liability for 1994 and 1995." (See Reply, pp. 4–5).

In a refund suit, the taxpayer not only bears the burden of proving that the IRS's assessment of taxes was erroneous, but also bears the burden of showing the amount he is entitled to recover. *United States v. Janis*, 428 U.S. 433, 440–41, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor*, 293 U.S. 507, 514 & 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Winstead v. United States*, 109 F.3d 989, 993 (4th Cir.1997); *Alvary v. United States*, 302 F.2d 790, 795 (2nd Cir.1962). When the taxpayer seeks a refund on the basis of deductions, the taxpayer must prove the legality and specific amount of each deduction claimed. *Great Northern Nekoosa Corp. v. United States*, 711 F.2d 473, 475 (1st Cir.1983); *United States v. Pfister*, 205 F.2d 538, 542 (8th Cir.1953); *Embry v. Gray*, 145 F.Supp. 383, 386 (W.D.Ky.1956); *see Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943) ("An income tax deduction is a matter of legislative grace and ... the burden of clearly showing the right to the claimed deduction is on the taxpayer."); *Niles v. United States*, 710 F.2d 1391, 1393 (9th Cir.1983) ("The taxpayer bears the burden of showing that he comes within the provisions of a specific deduction.").

In this case, the United States does not take issue with Mr. Tilley's assertion that business expenses and personal deductions are generally deductible, even for the tax-

---

5. Importantly, although Thomas Tilley and his spouse, Iris Tilley, are plaintiffs together in the refund lawsuit, the IRS made assessments only against Thomas Tilley for 1994 and 1995. Iris Tilley was not assessed liabilities for 1994 or 1995. In seeking a refund based on business expenses and personal de-

ductions, the relevant inquiry will thus be whether Mr. Tilley has met his burden of showing the 1994 and 1995 assessments against him are incorrect and that he is entitled to business expenses and personal deductions.

payer who does not file a return. (*See* Reply; Pls' Resp., p. 17 (citing *Robertson v. Commissioner*, 79 T.C.M. (CCH) 1725, T.C. Memo 2000–100, 2000 WL 303133 (2000); *Bagby v. Commissioner*, 102 T.C. 596, 1994 WL 122121 (1994))). That much is accepted by this court, without further discussion. The key issue in this case, however, is whether the evidence brought forth by Mr. Tilley, in the Declaration of Thomas Tilley, presents a triable issue as to whether Mr. Tilley is entitled to itemized deductions for the 1994 and 1995 tax years.

Mr. Tilley has attached the following financial documents [6] to his Declaration, which he contends shows that he is entitled to a refund in this case:

*Exhibit A* (1994 financial documents) includes copies of–

DOCUMENT # 1

IRS Form 1099–MISC, showing the name and address of Thomas Tilley, and showing $119,920.08 in income as "rents" in 1994.

DOCUMENT # 2

A financial statement (7 pages) showing the name and address of "Thomas Tilley" at the top, showing "total expenses," "net operating income," and "cash flow" for what appear to be rental properties at about twenty different locations.

DOCUMENT # 3

An itemized statement, with no identifying information, entitled "Schedule B (continued)—year 1994" showing the following information:

| | |
|---|---|
| Repairs and maintenance | $ 32,121.– |
| Insurance | $ 4,358.– |
| Fees/licenses Realty Com. | $ 7,195.– |
| Interest on credit used | $ 98,805.– |
| Other Property taxes | $ 12,352.– |
| * * * | |
| TOTAL OF SCHEDULE B | $154,831.– |

DOCUMENT # 4

An "annual information statement" from the Mortgage Company of Virginia, dated 12/30/94 and showing a "tax ID 240–48–0849" and name "Thomas E. Tilley—C/O Jim Willette Kermit manager". The statement indicates "interest paid—11211.24" and "IRS amt. 11211.24".

DOCUMENT # 5

An "annual information statement" from the "Mortgage Company of Virginia," dated 12/30/94 and showing a "tax ID 560–74–7649" and name "Tilley-six Inc. Thomas Tilley." The statement indicates "interest paid—19966.56" and "IRS amt. 19966.56".

DOCUMENT # 6

A "statement of account" from "North Central Farm Credit ACA," dated 12/31/94; showing a customer number ending –0001 and name "Thomas E. Tilley;" and indicating, inter alia, outstanding notes with "interest paid year to date" at $10,628.39 and $1,087.98.

DOCUMENT # 7

A "statement of account" from "North Central Farm Credit ACA," dated 12/31/94; showing a customer number ending –0002 and name "Thomas E. Tilley;" and indicating, inter alia, an outstanding note with "interest paid year to date" at $15,782.91.

6. The documents attached to the declaration are not numbered, nor are page numbers provided for the documents. For ease of reference, the court will label and refer to the documents attached to the Declaration as "DOCUMENT # 1, ... DOCUMENT # 2, etc.," in the manner as set out in the text.

DOCUMENT # 8

A statement from "Yadkin Valley Bank & Trust Co," dated December 31, 1994; showing a customer name Thomas E. Tilley—social security nbr 240480849; and showing "interest pd interest refund 3,982.93"

DOCUMENT # 9

An "invoice" from "Commercial Equipment, Inc.," dated 09/19/94; listing "Tilley, Thomas E.—Tilley Enterprises" as recipient of a "copier" for a total of $352.44.

DOCUMENT # 10

An "Acknowledgement of Charitable Contributions" from "Jerry Falwell The Old Time Gospel Hour/LBN, Inc." showing charitable gifts by "Mr. and Mrs. Thomas Tilley" in 1994 in amounts of $180.00 and 129.00, minus "fair market value" of items of $15.00 and $19.00.

DOCUMENT # 11

A "receipt" from "Campus Crusade for Christ International" showing charitable gifts by "Mr. and Mrs. Thomas Tilley" in 1994 in the amount of $480.00.

DOCUMENT # 12

A "page 3" from a form entitled "charitable contributions tax report for the year 1994" from "Cresset Baptist Church," naming "Iris Tilley" in type, and "Thomas Tilley" in handwriting; and showing a total of $6,262.00 in contributions.

DOCUMENT # 13

Copies of 32 checks made to the order of various entities in 1994, including

"Farm Bureau" for "insurance,"

"Moore Co Tax Collector" for "property tax,"

"Internal Revenue Service" for "237–04–8039,"

"Liberty University" for "Contribution,"

"Metro Air Conditioning" for "repairs,"

"Robinson, Bradshaw + Hinson" for "Attorney,"

and indicating "Tilley Enterprises" at the heading of the checks.

*Exhibit B* (1995 financial documents) includes copies of–

DOCUMENT # 14

IRS Form 1099–MISC, showing the name and address of Thomas Tilley, and showing $129,792.19 in income as "rents" in 1995.

DOCUMENT # 15

A financial statement (7 pages) showing the name and address of "Thomas Tilley" at the top, showing "total expenses," "net operating income," and "cash flow" for what appear to be rental properties at about twenty different locations.

DOCUMENT # 16

An itemized statement, with no identifying information entitled "Schedule B (continued)—year 1995" showing the following information:

| | |
|---|---|
| Repairs and maintenance | $ 28,268.- |
| Insurance | $ 4,400.- |
| Fees/licenses Realty Com. | $ 7,787.- |
| Interest on credit used | $ 87,390.- |
| Other Property taxes | $ 12,852.- |
| * * * | |
| TOTAL OF SCHEDULE B | $140,831.- |

DOCUMENT # 17

A document, dated 9/07/95, from "Scottsdale Insurance Company—North Carolina Farm Bureau," listing "Tilley, Thomas E." as "insured" and stating "New Annual Premium: 2,534.00."

DOCUMENT # 18

A document showing "1995 total interest paid" at $4645.60, showing a partial payment stub apparently from Thomas E. Tilley, but not showing any payee. A different portion of the document showing "the interest paid on this account is $3,203.16" listing "Chemical Financial Management Corporation" and including handwriting showing "Thomas Tilley."

DOCUMENT # 19

An "annual information statement" from the Mortgage Company of Virginia, dated 12/29/95 and showing a "tax ID 240–48–0849" and name "Thomas E. Tilley—T Bruce Tilley". The statement indicates "interest paid—49857.19" and "IRS amt. 49857.19" [sic].

DOCUMENT # 20

An "annual information statement" from the "Mortgage Company of Virginia," dated 12/29/95 and showing a "tax ID 560–74–7649" and name "Tilley-six Inc. Thomas Tilley." The statement indicates "interest paid—23637.46" and "IRS amt. 23637.46".

DOCUMENT # 21

A Statement from "First Community Bank," of "Forest, VA," listing "Tilley Six Trust" "Tax ID Number 240–48–0849" and "Interest Paid 1,604.60" in the year 1995.

DOCUMENT # 22

An "Annual Statement" (two pages) from "BB & T Mortgage" showing "reported [mortgage] interest to the IRS for 1995" for "Mr Thomas E Tilley—Mrs Iris M Tilley" at $2,067.97, and $4,133.17.

DOCUMENT # 23

A "1995 year-end giving report" from "Campus Crusade for Christ International" showing charitable gifts by "Mr. and Mrs. Thomas Tilley" in 1995 in the amount of $480.00.

DOCUMENT # 24

A "page 4" from a form entitled "charitable contributions tax report for the year 1995" from "Cresset Baptist Church," naming "Iris Tilley" in type, and "Thomas Tilley" in handwriting; and showing a total of $6,213.00 in contributions.

DOCUMENT # 25

An undated letter from "The Heritage Foundation" acknowledging a $25.00 contribution from Thomas Tilley.

DOCUMENT # 26

An "Acknowledgement of Charitable Contributions" from "Jerry Falwell The Old Time Gospel Hour/LBN, Inc." showing charitable gifts by "Mr. and Mrs. Thomas Tilley" in 1995 amounting to $70.00, minus "fair market value" of items of $15.00.

DOCUMENT # 27

Copies of 47 checks made to the order of various entities in 1995, including, for example,

"N.C. Farm Bureau" for "insurance,"

"Ashe Co Tax Collector" for "property tax,"

"1041 Services" for "CPA,"

"Metro Air Conditioning" for "repairs,"

"Robinson, Bradshaw + Hinson" for "Attorney,"

and indicating "Tilley Enterprises" at the heading of the checks.

(*See* Declaration, ¶ 21 & 22, Exs. A & B).

The United States points out several shortcomings in these documents which it claims entitles it to summary judgment. First, the United States argues that "the

documents contain inadmissable hearsay and thus are not admissible as evidence." (Reply, p. 4). In support of this contention, the United States does not explain which documents or portions of documents contain inadmissable hearsay, and merely cites to the case of *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991). *Williams*, however, does not directly bear on the issue of whether the documents attached to Mr. Tilley's sworn declaration are not admissible as evidence on summary judgment because of hearsay problems. The Fourth Circuit in *Williams* states:

> As a general rule, when one party files a motion for summary judgment, the nonmovant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. However, a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.

952 F.2d at 823. Here, Mr. Tilley has not "merely rel[ied] on matters pleaded in the complaint," *id.*, but has instead, through documents described in and attached to a sworn declaration, responded to the motion. Thus, the general rule in *Williams* applies, and the documents attached to the Declaration are not barred from consideration based on *Williams*. The court is otherwise satisfied that, because the documents are certified in the Declaration as "true and correct copies of receipts for personal deductions and business expenses," (Decl. ¶¶ 21 & 22), the attached documents are, insofar as they are relevant, not barred from consideration on summary judgment. *See* FED.R.CIV.P. 56(e) (providing that a declarant shall attach to a declaration any "sworn or certified copies of all papers or parts thereof referred to in [the declaration]").

Next, the United States argues that, even if the documents are admissible evidence, many of the documents concern the entity "Tilley Enterprises" but give no explanation of what Tilley Enterprises is or how it relates to Thomas Tilley's tax liabilities. For instance, Mr. Tilley does not explain what type of entity Tilley Enterprises is, such as whether it is a corporation, sole proprietorship, or Subchapter S entity. Nor does Mr. Tilley explain why he would be entitled to deduct amounts paid by Tilley Enterprises, or what the expenses are for. Similarly, several documents relate to plaintiff Mrs. Iris Tilley, but Mr. Tilley does not explain how financial records relating to Iris Tilley affect deductions for Thomas Tilley. As a result, the United States argues that any documents concerning this entity or Iris Tilley should be disregarded as irrelevant to the tax liabilities of Thomas Tilley.

In addition, the United States argues that the two documents entitled "Schedule B (continued) 1994" and "Schedule B (continued) 1995" are not explained or fully supported by the other documents provided. In particular, the United States notes that these Schedules report $98,805 and $87,390 for "interest on credit used," but that "none of the other documents remotely support these amounts." (Reply, p. 5).

 The court finds the United States' points, insofar as they concern the specific documents mentioned, well taken. It is true that Mr. Tilley never explains what "Tilley Enterprises" is, or how expenses incurred or paid by Tilley Enterprises or Mrs. Tilley can qualify as deductions for Thomas Tilley. Nor does Mr. Tilley explain what a certain "Tilley–Six Inc.," appearing in some of the documents, is, or how expenses incurred or paid by Tilley–Six, Inc., can qualify as deductions for Thomas Tilley. Therefore, as the documents are submitted at this stage of the litigation, the court finds records pertaining to "Tilley Enterprises," Mrs. Iris Til-

ley, or "Tilley–Six Inc." are not sufficient evidence to satisfy the burden of establishing deductible amounts for Thomas Tilley. *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505 (stating that, on summary judgment, courts are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party"). In particular, this means that the following documents submitted by Thomas Tilley do not satisfy the burden of showing deductible amounts for Thomas Tilley:

Document # 5 (statement from Mortgage Company of Virginia)

Document # 9 (invoice)

Document # 10 (charitable contribution)

Document # 11 (charitable contribution)

Document # 12 (charitable contribution)

Document # 13 (32 checks)

Document # 20 (statement from Mortgage Company of Virginia)

Document # 21 (statement from First Community Bank)

Document # 22 (BB & T Mortgage)

Document # 23 (charitable contribution)

Document # 24 (charitable contribution)

Document # 26 (charitable contribution)

Document # 27 (47 checks)

In addition, two of the remaining documents labeled "Schedule B" (Document # s 3 & 16) are not helpful because they do not contain any identifying information. Nor do these documents contain any explanation or cross-reference to other documents which might provide a basis for the numbers indicated on "Schedule B." Nor is there any explanation of why Mr. Tilley

has included a page labeled "continued" but has not included the previous pages to this document. Accordingly, the court finds that the documents labeled "Schedule B" (Document # s 3 & 16), as they are in their current form, do not satisfy the burden of establishing deductible amounts for Thomas Tilley.

The remaining documents do not suffer from the same flaws as those described above. For instance, the remaining documents all identify Thomas Tilley as the sole payor of certain expenses or interest incurred during the tax years 1994 and 1995. (*See* Document # s 1, 2, 4, 6–8, 14, 15, 17–19, 25). Nevertheless, apart from pointing out faults in individual documents, the United States claims that, by merely attaching receipts and financial records to his Declaration, Mr. Tilley has not met his burden to show exactly what Thomas Tilley's correct liabilities for 1994 and 1995 are. The court agrees.

Although Mr. Tilley has provided some documents that appear to show expenses paid by him in 1994 and 1995, Mr. Tilley has never stated, much less justified in any clearly ordered detail, what his deductions should be for the 1994 and 1995 tax years. Nor has Mr. Tilley shown how these deductions balance out against the rental and other income (*e.g.,* $119,920 in rental income in 1994 and $26,720 in interest income in 1994) found in the Notice of Deficiency and tax assessments made by the IRS. (Gov. Exs. 1 & 2).[7] In turn, Mr. Tilley has not shown what his correct taxable income should be, nor what his corrected tax liability, and resulting refund if any, should be.

7. The IRS's assessment that Mr. Tilley received income from dividends, interest, patronages, and rents in 1994 and 1995 is entitled to a presumption of correctness, *see Helvering v. Taylor,* 293 U.S. at 515, 55 S.Ct. 287, and

the documents submitted by Mr. Tilley do nothing to rebut this presumption. Indeed, Document # s 1 & 14 go so far as to confirm the rental income assessed in 1994 and 1995.

■ The lack of specificity in Mr. Tilley's claim is highlighted by the argument he sets out in his brief in opposition to summary judgment. Mr. Tilley's argument that he is entitled to deductions for 1994 and 1995 spans almost five pages. These five pages, however, are almost entirely taken up by a discussion of why he should, as a general matter, be permitted to make personal deductions even though he did not file a return for 1994 and 1995. (Br. in Resp., pp. 15–19). As the court noted before, this proposition is undisputed. Noticeably lacking, though, is any discussion of which deductions apply to Mr. Tilley in this case, the amounts of each deduction, and which documents support each deduction.

Mr. Tilley makes only one conclusory statement in a footnote regarding the documents attached to the Declaration. In particular he writes:

> It is uncontested that the items attached to the declaration of Tilley, which are supported by substantial evidence, are generally deductible. See, e.g., 26 U.S.C. § 213(a) (deduction for expenses paid for medical care of the individual, his or her spouse, or a dependent); § 164(a)(1) (deduction for real property taxes); § 164(a)(2) (deduction for state and local property taxes and ad valorem auto license fee); § 162(a) (deduction for all ordinary and necessary expenses incurred in carrying on a trade or business); § 163(a) (deduction for interest paid or incurred on indebtedness); § 163(h)(2)(D) (deduction for interest on a qualified residence); etc.

(Pls' Resp., p. 17, n. 3). This statement is insufficient to demonstrate the types and amounts of deductions in this case. Notably, Mr. Tilley makes no attempt to show how the statutory deductions listed after "see, e.g.," apply to his case at all. For instance, no document attached to the Declaration pertains to "expenses paid for the medical care" of any Tilley family member. 26 U.S.C. § 213(a). Nor does there appear to be any document pertaining to an ad valorem auto license fee. § 164(a)(2). Nor is it apparent what other statutory deductions (designated by the "etc." used by Mr. Tilley) apply to Mr. Tilley for the 1994 and 1995 tax period. Furthermore, although some of the documents in the Declaration might apply to one of the other statutory deductions listed, Mr. Tilley has failed to show which documents apply to which deductions and in what amounts. Finally, Mr. Tilley's statement that "the items attached to the declaration … are *generally* deductible," (Pls' Resp., p. 17, n. 3) (emphasis added), only further emphasizes the flaw in Mr. Tilley's argument, namely that he has not shown that the items attached to the declaration are *specifically* deductible in this case.

■ In sum, the court finds that, although some documents submitted by Mr. Tilley appear to relate to business and personal expenses paid by Mr. Tilley during the 1994 and 1995 tax years, Mr. Tilley has failed to provide sufficient evidence to satisfy his burden of clearly showing how these expenses relate to his tax liability and refund due. It is not the role of this court (or the jury) to set out and calculate Mr. Tilley's itemized deductions on his behalf. *See Hefti v. Internal Revenue Service,* 8 F.3d 1169, 1173 & 1174 (7th Cir. 1993) (noting that unless the taxpayer files a "detailed statement" providing the grounds for the deductions, as well as documentation substantiating the deductions claimed, no meaningful review of a claim for refund is possible). Accordingly, the United States is entitled to summary judgment as to Mr. Tilley's claim for a refund on the basis of itemized deductions.

### III. Conclusion

The Tilleys' claims for a refund fail as a matter of law. Furthermore, the discov-

ery sought has no bearing on the outcome of these claims, both because the claims fail as a matter of law and, especially in the case of the claim for deductions, because the discovery has no relevance to the issue in the claim.

For the forgoing reasons, Defendant's motion [Doc. # 19] for protective order is GRANTED and Defendant's motion [Doc. # 13] to dismiss and for summary judgment is GRANTED.

A judgment will be entered simultaneously herewith.

So ordered.